## ISABELLA LEWIS v. HARVEY W. RICE.

*Attachment suit—By creditors of vendor—Trover by vendee for attached property—Statements of vendor, made after attachment to third party, tending to show fraudulent sale, inadmissible—Testimony concerning extravagance of vendee's daughter, properly rejected—Requests to charge—Refusal to give in the exact form asked for; not error if general charge contains all that is proper and pertinent in them—Request assuming existence of a certain state of facts should seldom be given—And never if there is room for a different finding by the jury—Sale on credit—If honestly made, not illegal because merchant owes debts—Fraud, under the statute, always a question of fact—Not presumed from such credit sales—May be from failure to change possession—Or deviation from ordinary course of business—Action for fraud not assignable—Statute allowing creditors to treat certain dealings as absolutely void, confined to frauds against creditors—Attachment proceedings cannot be regarded as taken in debtor's behalf—Nor can attaching creditors assume to represent debtor.*

1. On the trial of an action of trover brought by a vendee against an officer who, at the suit of creditors of the vendor, attached the goods sold, the proposed testimony of a witness produced by the defendant, as to the actions and statements of the vendor the day *after* the attachment, was properly rejected by the court. Apart from its apparent irrelevancy, it was not competent to allow such sale to be affected by the declarations of *one* of the parties, in derogation of the rights of the *other*, after the commencement of the attachment suit, and when such declarations were not part of the transaction itself.

2. In such a case, testimony concerning the economy or extravagance of the plaintiff's daughter, in dress and other expenditures, could have no bearing on the nature or consideration of the purchases made by her mother, and was properly excluded.

61 MICH.—7

3. The trial court is not required to give specific charges in the exact form asked, if all that is proper and pertinent is contained in the charge actually given; and where a charge requested to be given assumes a certain state of facts as *existing*, it should seldom be given at all, and *never* if there is any room for a different finding by the jury.

4. The law does not prohibit honest sales of goods on credit merely because a merchant owes debts. A very large share of business is necessarily transacted in that way, and it has never been supposed that the purchaser could be held responsible for a dishonest purpose of his vendor on that account. The statute in regard to frauds against creditors makes fraud in *all* cases a question of *fact*, and has laid down no rules allowing presumptions of fraud from sales on credit. Such presumptions may arise from a failure to change possession, and some express deviations from the *ordinary* course of business, but not from the mere failure to pay cash down.

5. An action for fraud is not assignable, and the statute which allows creditors to treat certain dealings as absolutely *void* confines their redress to frauds aimed against creditors; and attachment proceedings against a debtor cannot be regarded as taken in his behalf, nor can the attaching creditor assume to represent such debtor.

Error to Montcalm. (Smith, J.) Argued April 15, 1886. Decided April 22, 1886.

Trover. Defendant brings error. Affirmed. The facts are stated in the opinion, and in head-note 1.

*George S. Steere*, for appellant:

Where the question being tried is whether a fraud has been committed, the law allows a wide range of examination: *Cook v. Perry*, 43 Mich. 627; *Fury v. Strohecker*, 44 Id. 338; *Dibble v. Nash*, 47 Id. 591; *Cronkhite v. Dickerson*, 51 Id. 178.

Under suspicious circumstances, the court will be very liberal in permitting the defendant to show all of the facts and circumstances which could have any legitimate bearing on the question of the *bona fides* of the transfer: *Judge v. Vogel*, 38 Mich. 571–2; and any relation which gives rise to confidence, though not a badge of fraud, strengthens the presumption that may arise from other circumstances, and serves to elucidate, explain, or give color to the transaction: Bump on Fraudulent Conveyances (2d ed.) pp. 55–6–7–8–9, and ref., and 203, n. 1; *Venable v. Bank of U. S.*, 2 Peters,

107; *King v. Hubbell*, 42 Mich. 600; Bigelow on Fraud, 271; Cooley on Torts, 510, 514.

It is always competent to show what precedes and follows the transfer, the prior and subsequent relations of the parties, and all the facts and circumstances surrounding it: *Erfort v. Consalus*, 47 Mo. 208; *Tedrowe v. Esher*, 56 Ind. 443; Bump on Fraudulent Conveyances, 590; Bigelow on Fraud, 476, and ref.

It is insisted that the evidence offered of the acts and declarations of Louis Simon would assist in giving character to the transaction, and constituted a part of the *res gestæ*: Bump on Fraudulent Conveyances, 581, note 5; *Sundry Goods, etc., v. U. S.*, 2 Peters, 358.

If the declaration is so connected with the main fact under consideration as to explain its character, further its object, or to form in conjunction with it one continuous transaction, the evidence is admissible without regard to the time when the act was done or the declaration made: *Bogert v. Phelps*, 14 Wis. 88; *Wyckoff v. Carr*, 8 Mich. 47; Bump on Fraudulent Conveyances, 583; *Cook v. Cook*, 43 Md. 522.

The transaction between the fraudulent grantor and purchaser must be completely closed by the payment of all the purchase money, and the completion of the transfer, before notice, or the purchaser cannot hold the property: *Hanford v. Artcher*, 4 Hill, 295–6; Bump on Fraudulent Conveyances, p. 493, and note 5; and notice before the payment of the purchase money is sufficient to invalidate the transaction: Bump on Fraudulent Conveyances, 494, notes 1 and 2; *Thomas v. Stone*, Walker's Ch. 117, note 1; *Kohl v. Lynn*, 34 Mich. 361; *Haescig v. Brown*, 34 Id. 503–6; *Matson v. Melchor*, 42 Id. 481, and ref.; *Dixon v. Hill*, 5 Id. 404 (note 1), 409.

If the effect of the conveyance is such as to delay or hinder creditors, it is fraudulent regardless of the intent: *Buck v. Sherman*, 2 Doug. (Mich.) 176, 183; *Oliver v. Eaton*, 7 Mich. 113; *Fellows v. Smith*, 40 Id. 691; *Matson v. Melchor*, 42 Id. 477–81; and conveyances may be set aside as to creditors at their option alone: *Richardson v. Welch*, 47 Id. 312; *McMaster v. Campbell*, 41 Id. 516; *Judge v. Vogel*, 38 Id. 569–74; *Pierce v. Hill*, 35 Id. 194–201; *McAuliffe v. Farmer*, 27 Id. 76–8.

No right can be deduced from a fraudulent act. Every one who engages in a fraudulent scheme forfeits all right to protection either at law or equity. The law does not so far countenance fraudulent contracts as to protect the perpetrator

to the extent of his investment. This doctrine is supported by every principle of morality and justice, as well as by the principles of sound policy. No party should be permitted to join in a conspiracy to cheat another with impunity: Bump on Fraudulent Conveyances, 613, 614, and notes; *Lynde v. McGregor*, 95 Mass. 181, and ref.

Generally speaking, if fraud has been practiced, the wrong-doer must answer to any one directly injured thereby: *Benzein v. Lenoir*, 1 Dev. Eq. 225; *Clifford v. Brook*, 13 Ves. 131; *Crane v. Reeder*, 25 Mich. 312.

Fraud is never presumed, and the party alleging and relying upon it must prove it: Cooley on Torts, 475, note 2; *Elliott v. Stodart*, 98 Mass. 145; *Darling v. Hurst*, 39 Mich. 767; *Powers v. O'Brien*, 44 Id. 318.

This, however, is one of those rules of law which is to be applied with caution and circumspection. So far as it goes, it is based on a principle which has no more application to frauds than to any other subject of judicial inquiry. It amounts but to this: that a contract honest and lawful on its face must be treated as such until it is shown to be otherwise by evidence of some kind, either positive or circumstantial: Cooley on Torts, 475, note 3; the general rule being that in every case in which there is *prima facie* evidence of any right existing in any person, the burden of proof is always on the person or party calling such right in question: *Walker v. Detroit Transit Ry. Co.*, 47 Mich. 351.

Upon the appearance of certain relations between the parties termed relations of confidence, the law raises a presumption of fraud—a presumption that the transaction was effected through the fraud or undue influence of the opposite party by reason of his occupying a position affording him peculiar opportunities for taking advantage of a complaining party. Instead of the burden of proof resting upon the complaining party, the law, looking to the frailty of human nature, requires the party in the superior situation to show that his actions have been honest and honorable: Bigelow on Fraud, 190 *et seq.*; *Seeley v. Price*, 14 Mich. 546 and ref.; *Wartemberg v. Spiegel*, 31 Id. 403; *Hammontree v. Lott*, 40 Id. 195; *Duncombe, Adm'r, v. Richards*, 46 Id. 166–7; *Storrs v. Scougale*, 48 Id. 388.

The contract of marriage establishes confidential relations between the parties but little less intimate than that of marriage itself, and almost equally susceptible of being taken advantage of for the purposes of fraud: Cooley on Torts, 510; Bigelow on Fraud, 271; *Rockafellow v. Newcomb*, 57 Ill. 186.

*M. C. Palmer* and *F. A. Lyon*, for plaintiff:

The declarations of a party to a conspiracy made *after* the consummation of the enterprise are not admissible as against the other conspirators: Bigelow on Fraud, 480 ; *People v. Arnold,* 46 Mich. 268, 277.

The charge of the court must be taken as a whole, and if full and clear upon every material point involved it is not error to refuse to give special requests to charge : *Hart v. Newton,* 48 Mich. 403 ; and where a charge, considered as a whole, cures an apparent error in modifying a request for an instruction, the judgment will not be reversed for such error : *G. R. & I. R. R. Co. v. Cameron,* 45 Id. 452.

The court committed no error in giving plaintiff's second and third requests as follows :

" If the jury find that the plaintiff bought the goods in good faith, and for a valuable consideration, but that Louis Simon sold them for the purpose of cheating and defrauding his creditors, and the plaintiff not having notice of the fraudulent intent of Simon, then they should find for the plaintiff.

" If the jury find that there was a conspiracy existing among the Lewises to cheat and defraud Simon, but that Simon sold and disposed of the goods in good faith, and without intent to defraud his creditors, and plaintiff paid a valuable consideration therefor, they should find for the plaintiff."

How. Stat. § 6207 ; *Miller v. Finley,* 26 Mich. 249–255 ; *Spring Lake Iron Co. v. Waters,* 50 Id. 15 ; *Sterling v. Ripley,* 3 Phinney (Wis.) 155 ; *Hopkins v. Langdon,* 30 Wis. 379 ; *Mehlhop v. Pettibone,* 54 Id. 652.

CAMPBELL, C. J. This action of trover was begun by plaintiff to recover for the conversion of goods levied on by defendant while a part of plaintiff's stock in trade, under an attachment against one Louis Simon, who, as well as plaintiff, did business in Edmore. The plaintiffs in attachment had sold goods to Simon, who had a considerable stock, for which he was more or less indebted. The goods seized from the store of plaintiff consisted of a lot of clothing sold to her by Simon in one transaction, as claimed, and of other articles subsequently, but soon thereafter transferred. When the attachment was levied, defendant first seized Simon's stock on hand, the exact value of which does not appear from the printed record, which was subject to a voluntary chattel

mortgage made to his brother, only claimed to be valid for a portion of its nominal amount. The goods held by plaintiff were taken thereafter on the same writ.

In the present record the sufficiency of the first levy to protect the creditors' claim, without recourse to plaintiff, was not, so far as we discover, made a governing question. The case was tried on the claim by defendant that the sales to plaintiff were void as against creditors. Simon himself was the principal witness relied on by defendant, and he testified that the clothing sale to plaintiff was made in good faith. As to the remainder he intimated that he had been cajoled into making it, against his own interests, but with no wrong intent on his own part. From the facts which he detailed, and other circumstances, defendant was allowed to claim fraud in all the parties, and the court charged the jury on that theory. They found for plaintiff on the facts, and defendant insists that the case was not given to them by the court as favorably as it should have been.

The court opened the door very wide to admit testimony, not only of the acts, but also of the surroundings, of the parties. It is not within our province to form or express an opinion upon these facts. There were no such admitted facts as necessarily made the dealings fraudulent against creditors, and we can only disturb the verdict if given under erroneous rulings.

The errors assigned are partly upon the rejection of testimony, and partly on the charges given, or on failures to charge.

The first nine errors assigned all refer to refusals to admit testimony concerning the conduct of Mary Lewis, a daughter of plaintiff, who had been a saleswoman in the employ of Simon, and to whom defendant claimed he had paid attentions with a view to marriage. One of the errors assigned was to the rejection by the court of the following question asked of a lady living in the neighborhood concerning Simon. Having said, in answer to a question, that Simon was in her house the day after the attachment was levied and the store closed upon it, she was further asked, " What were his actions

and statements to you that morning?" This was ruled out, as not sufficiently bearing on previous consummated transactions.

Apart from its apparent irrelevancy, it is certainly not competent to allow previous transactions to be affected by the declarations of one of the parties to them, in derogation of the rights of the other, after a controversy has arisen, and when they can by no possibility be treated as parts of the transaction itself. It is the baldest kind of hearsay, as well as open to the further difficulty that it would, in this case, have enabled Simon to make testimony inuring to his own advantage in the settlement of his debts. There is no ground on which such testimony could be permitted.

Very full liberty was given to show to the jury all the domestic relations between plaintiff and her husband and Simon. This was going as far as could properly be permitted, and it was allowed as throwing some light on the nature of their dealings. But we do not think the court erred in shutting out testimony concerning economy or extravagance of plaintiff's daughter in dress and expenditure, as shown by third persons. It could have no bearing on the nature or consideration of the purchases made by her parents of Simon.

Error is alleged on the failure of the court to give certain charges. The trial court is not required to give specific charges in the exact form asked, if all that is proper and pertinent is contained in the charge actually given; and where a charge requested assumes a certain state of facts as to be held as existing, it should seldom be given at all, and never if there is any room for a different finding by the jury. The third and fourth requests in regard to the effect of collusion and conduct, and in regard to how fraud may be proved, were given in the general charge, so far as proper, in a very clear and intelligible way, and we do not see how the jury could have been more fairly instructed. We think the sixth, seventh, and eighth requests stand in the same way. The charge is very explicit upon the whole question of fraud, and its effect on the bargain. It was also entirely correct on the bearing of the burden of proof.

The only thing suggested, on the argument, in the charge itself; which introduced what is supposed to be a different element from those in the requests, is in answer to a suggestion of plaintiff's counsel. The court in one charge left it in doubt whether goods could be lawfully sold except for cash down. On an inquiry whether a sale might not be made on time, the court held that a time sale might be good, with a valid promise to pay.

We do not think the law prohibits honest sales of goods on credit merely because a merchant owes debts. A very large share of business is necessarily done in that way, and it has never been supposed that the purchaser could be held responsible for a dishonest purpose of his vendor on that account. The statute in regard to frauds against creditors makes fraud in all cases a question of fact, and has laid down no rules showing presumptions of fraud from sales on credit. Such presumptions may arise from failure to change possession, and some express deviations from the ordinary course of business, but not from mere failure to pay cash down. A large majority of business sales would fail if any such rule prevailed. There must be fraud in fact.

Although no request was made on the subject, and defendant tried the case chiefly on an issue of fraudulent conspiracy between plaintiff and Simon to cheat his creditors, yet error is assigned upon a part of the charge indicating that, although there may have been no design to cheat creditors, they can, nevertheless, in an action at law, undertake to redress frauds against their own debtor. And it is claimed that, if Simon was cheated by plaintiff, defendant may treat the sale as void.

No authority appears to warrant any such conclusion. It is very well settled that an action for fraud is not assignable, and that fraud is only to be complained of by the party injured. The statute which allows creditors to treat certain dealings as absolutely void confines their redress to frauds aimed against creditors. We need not consider how far such frauds against a debtor might be reached in equity. But attachment proceedings against a debtor cannot be regarded

as proceedings in his behalf, and an attaching creditor cannot assume to represent him. As the court in this case treated defendant as having a complete right to attack the dealings complained of, and went too far, under the testimony, in treating all the sales to plaintiff as governed by the same considerations, when Simon testified they were not, there was no ground for complaining that defendant was prejudiced by the refusal to receive the later attachment proceedings, not mentioned in the notice attached to the plea. Every possible right which any creditor could have was accorded to defendant as representing creditors.

If any wrong was done in this case, it was not done by the court, but by the jury. It is not within our province to consider whether the jury were mistaken or not. The testimony was conflicting, and in some things peculiar. We cannot disturb their conclusions.

The judgment must be affirmed.

SHERWOOD and CHAMPLIN, JJ., concurred. MORSE, J., did not sit.