## MARTIN WAIT v. LOYAL C. KELLOGG.

*Pleading—Joinder of counts—Fraud—Notice of*

1. A count in trover and one in case, for the alleged wrongful taking of personal property by a sheriff for the debt of a third party, can be joined, and it is error for the court to compel an election on the trial.

2. Plaintiff sued a sheriff in trover for the alleged wrongful seizure of a stock of goods under attachments and executions against a former owner, joining a count in *case*, in which he set forth *specifically* his ownership, and the denial by the defendant of the same, coupled with the claim that plaintiff fraudulently claimed such ownership. Defendant *justified* under the attachments and executions as levied upon the property of the attachment debtor, but gave no notice of fraud.

*Held*, by SHERWOOD, J., CAMPBELL, C. J., concurring, that *all*

*facts* constituting the fraud relied upon at the trial should *properly* have been set forth in the notice, and that, in the absence of *any* such notice, evidence of such alleged fraud should have been rejected. CHAMPLIN and MORSE, JJ., concurred in the result.

Error to Calhoun. (Hooker, J.)˙ Argued July 8, 1886. Decided October 14, 1886.

Case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*William D. Adams* (*Norris & Uhl,* of counsel), for appellant.

*Miner & Stace,* for defendant.

SHERWOOD, J.   On the nineteenth day of December, 1882, and for several years previous thereto, Mrs. Sarah K. Burleigh carried on a store business at the village of Homer, in the county of Calhoun. The business was carried on in her own name, but actually transacted by her husband as her agent. His name was George R. Burleigh. Mrs. Burleigh did her banking business with Thomas Lyon.

Mrs. Burleigh became largely indebted to various persons and firms in conducting her business, and, among others, on the said nineteenth day of December, 1882, she owed Mr. Lyon $5,000, and on that day, to secure the payment of the same, executed and delivered to him a chattel mortgage on her entire stock of goods and other property.

The money thus secured was made payable on demand, and the mortgage was properly filed when made and executed.

On the same day Lyon took possession of the mortgaged property by virtue of the mortgage, and afterwards advertised and sold the goods, and he became the purchaser of the same, being the highest bidder therefor; and thereupon Lyon reopened the store and carried on the business, using

the old clerks in the store, and using the same stock which was in the store before the sale, with a few goods added.

The debt to Lyon, the mortgage given to secure the debt, and the sale of the mortgaged property are not questioned.

After Lyon had run the store about a week, and put in $600 or $700 worth of new goods, he sold out the stock and business to Martin Wait, the plaintiff in this case, who took possession thereof January 5, 1883. Prior to January, 1883, the plaintiff resided at Butler, in Branch county, a few miles from Homer, where he carried on a farming business, and in connection therewith ran a cheese factory and country store. When he bought the store at Homer he removed there and engaged in the store business. He at once took George R. Burleigh into his employment, and intrusted him with the management of the store business.

About the thirteenth of February, 1883, William P. Roome & Co., of New York, creditors of Mrs. Burleigh, levied an attachment on a portion of the Burleigh stock of goods, which the plaintiff replevied.

On the seventeenth day of February, very soon after the service of the writ of replevin, the defendant, as sheriff of the county of Calhoun, by virtue of a writ of attachment from the circuit court in favor of Kellogg & Baker and against Sarah K. Burleigh, attached certain other parcels of the same goods, and in a day or two thereafter levied two other attachments from the circuit court, viz., one in favor of the New Home Sewing Machine Company, and one in favor of Henry W. Price & Co., and also two justice's court executions, one in favor of Lyon & Harris, and one in favor of Buhl & Co.,—all against Sarah K. Burleigh, on other parcels of the same stock; and the plaintiff brings this suit in trover to recover the value of all the goods seized and levied upon on and after February 17, 1883. These goods were all taken by the defendant as the property of Mrs. Burleigh.

The plaintiff claims to be a *bona fide* holder of the goods under his purchase of the property from Mr. Lyon, and, further, that the defendant took large quantities of goods under his writs which were never a part of the Burleigh stock.

The defendant's contention is that the plaintiff is not a *bona fide* purchaser; that the several sales from Mrs. Burleigh down to him were fraudulent, and conveyed no title as against Mrs. Burleigh's creditors; that defendant took no goods except from the Burleigh stock, to his knowledge, and if any were taken by him it was caused by the commingling of the goods, and the refusal of the plaintiff to point out the goods not belonging to the Burleigh stock.

The defendant's plea in the case was the general issue, with notice that he would show justification under his several writs.

The cause was tried at the Calhoun circuit, by jury, and judgment was rendered for the defendant.

Plaintiff appeals, and we are asked to review a record in the case containing seventy-eight assignments of error, upon all of which counsel for plaintiff announces he relies.

All the evidence taken on the trial is contained in the record, except that relating to the subject of value of the goods.

There seems to be no question as to what was actually done when the transfers of the goods were made. It appears that, when Lyon transferred the stock to the plaintiff, the latter secured the payment of the purchase money by giving his note, due in thirty days, for $600, and a mortgage upon his farm for $3,300, it being the balance. The note was afterwards paid.

It also appears that, by the taking of the goods by the defendant, the plaintiff's business was broken up for a number of months, and he was very much damaged thereby.

After the proofs were closed, the circuit judge submitted

to the jury, in his general charge, by way of recapitulation, the following points for them to consider and pass upon:

" 1.   Was the plaintiff, or was Mrs. Burleigh, indebted to Kellogg & Baker, or any of those other firms whose attachments and executions are relied upon here by way of justification, at the time of the mortgage to Lyon?

" 2.   If you find that they were, what was the transaction between Burleigh and Lyon ?  Was that a valid transaction, or was it invalid ?  Was the mortgage given with an honest purpose to secure Lyon's debt, or was it given collusively, and with a view to defeat Burleigh's creditors ?

" 3.  What was the character of the proceedings to foreclose the mortgage?  Was that an honest transaction on the part of Lyon to recover his debt,—make his money,—or was it a transaction collusive in its character, for the purpose of defeating Burleigh's creditors ?

" 4.   What was the transaction with Wait,—between Lyon and Wait ?  Was Wait a party to any fraud, or was he an honest man, and purchased the goods honestly ?   If the latter, did he have notice brought home to him, within the definition already given, which should put him upon his inquiry, and therefore properly charge him with knowledge of that character, of the proceedings between Lyon and Burleigh ?   And, further, did he or did he not pay value for the goods ?

" Again: was there an admixture of goods here which excused the sheriff for taking goods which were never Burleigh's ?

" Again: were the exemptions selected and received by Mr. Wait (for he would have the same right to them Mrs. Burleigh would), or were they not taken by him?  Did he have an opportunity to take them, or was he precluded ?

\*          \*          \*          \*          \*          \*          \*

"The next question is to determine, if you find that Mr. Wait is entitled to recover, how much damages he should recover.  \* \* \*  What could those goods have been reasonably disposed of for, by Mr. Wait, if he had not been disturbed?  Whatever they would have brought him clear, over and above the expenses of selling, he is entitled to recover, and it does not make any difference whether he would have sold them at retail or wholesale. There is no iron-clad rule about that.  What the goods were fully or fairly worth in the market at that time, at that place, over and above the expense of selling, in the

condition that they were when they were taken, with interest upon the same at 7 per cent. until the present time, will be the amount of damages Mr. Wait should recover, if he is to recover in the case."

Testimony was given upon all the subjects mentioned in the above summary, and they were all proper to be submitted to the jury, and their verdict is the plaintiff is not entitled to recover. Of course, this result could not be reached by the jury except they found the transfers (1) from Mrs. Burleigh to Mr. Lyon, under his chattel-mortgage purchase, and (2) from Mr. Lyon to Mr. Wait, were both fraudulent, as against the execution and attaching creditors represented by the defendant.

This becomes quite apparent, in view of that portion of the charge where the judge says:

"So you see that the case is of that character that we may properly look for fraud in the mortgage, in the foreclosure; and if we find any fraud in those, or either of them, then we may look for fraud in the transfer to Wait. If there was no fraud by Lyon in taking and foreclosing the mortgage, it is the end of the case; if there was fraud by Lyon, and no fraud by Wait, it may be that Wait can recover."

The first question needing consideration is, were the jury allowed to reach their conclusion upon the competent and admissible testimony in the case?

All the errors assigned have been carefully noted, and the record fully inspected. But few will be herein discussed under this branch of the case. We have no doubt but the case was a proper one for the jury, and we think it is quite clear the pleadings in the case, even after election, as made, were sufficient to permit the plaintiff to recover for all damages sustained by him for the alleged unlawful taking of his goods, provided he was entitled to recover at all; and he should have been permitted to have made full proofs of such damages. This, however, he was not allowed to do, and the exceptions to this ruling by the court are contained

in the second and fourth assignments of error, and we think well taken.

The circuit judge compelled the plaintiff, after the trial commenced, to elect upon which counts he would go,— whether upon the counts in trover or upon the count in case. We think the counts were properly joined. No demurrer had been interposed, and, if one had been, we do not think it could have been sustained. The error upon this point is well assigned. Burr. Pr. 74, 127; *Beebe v. Knapp*, 28 Mich. 57, 58.

The notice given under the general issue in this case was insufficient to admit the testimony received for the purpose of showing that the mortgage of the goods to Lyon, and the sale made thereof by him, under and by virtue of the mortgage, were fraudulent and void as to the creditors of Mrs. Burleigh.

Fraud was the gist of the defense, and unless the mortgage and sale under it were fraudulent the defense could not be made out. No notice was given that these were fraudulent, or that the defendant would attempt to show them so. While not absolutely necessary, all facts constituting the fraud relied upon which were necessary to be proved should properly have been contained in the notice. This was not done, and the proofs offered tending to prove such fraud should have been rejected. How. Stat. §§ 6207, 7363; *McHardy v. Wadsworth*, 8 Mich. 356; *Rosenbury v. Angell*, 6 Id. 515; *Keeler v. Ullrich*, 32 Id. 88; *Cook v. Hopper*, 23 Id. 516; *Bodine v. Simmons*, 38 Id. 684.[1]

Until the mortgage and sale thereunder are shown to be fraudulent, the character of the conveyance to Wait was

---

[1]See *Eureka Iron & Steel Works v. Bresnahan*, 10 Western Reporter, 196, where it is held that in *trover*, where the *source* of plaintiff's title is not disclosed, the defendant need not *anticipate* the same, and may attack a chattel mortgage under which plaintiff claims, on the trial, as fraudulent, without special notice of such defense. If a count in trespass on the case is added, setting out such source of title, a notice is necessary.

immaterial, and this disposes of all the rest of the testimony admitted to show fraud in the case.

But, before leaving the subject, perhaps it is proper that we should say fraud is never presumed, nor will it be inferred from slight circumstances. It is not enough, to establish fraud, to show a large number of circumstances tending in that direction; it is only when that tendency is so strong that it generates full belief that it can be regarded as evidence, and it is not until that evidence has become so convincing as to amount to positive proof that it should be considered as established.

There is another subject to which some care and attention should be given, in case there is a second trial of the cause, and that is how far the statements and communications of G. R. Burleigh may be received in evidence, as the representative of Mrs. Burleigh, as against the plaintiff in the case.

The many other questions raised in the record it is not now needful to consider.

For the errors mentioned the judgment must be reversed, and a new trial granted.

CAMPBELL, C. J., concurred.

CHAMPLIN, J. I concur in the result reached by my Brother SHERWOOD. I do not think it safe to lay down any definite rule as to what evidence shall be sufficient or insufficient to establish fraud. Each case must depend upon its own circumstances; and when a combination of circumstances tending to show fraud are proved, which, taken together, are sufficient to satisfy the jury that a fraud has been committed, the jury should so find, and a preponderance of evidence is sufficient. *Hough v. Dickinson,* 58 Mich. 95.

MORSE, J., concurred.