GORDON *v.* ALEXANDER.[1]

1. INSOLVENT DEBTORS—SALE OF STOCK—CONSIDERATION.
   Where demand negotiable notes were given for the sale of an insolvent's stock, and the buyer paid a debt of the insolvent, on which he was liable as surety, it cannot be said that the sale was without consideration.

2. SAME—REQUESTS TO CHARGE—FRAUD.
   A request to charge which assumes the existence of fraud on the part of an insolvent in the transfer of his stock of goods is properly refused, where there is evidence from which the jury might find that the transfer was in good faith.

3. TRIAL—REFUSAL OF INSTRUCTIONS—HARMLESS ERROR.
   Refusal to give an instruction to which appellant was entitled will not warrant a reversal, where the verdict, viewed in the light of the general charge, shows that the refusal worked no harm to the appellant.

Error to Sanilac; Beach, J. Submitted October 25, 1899. Decided December 2, 1899.

Trover by James G. Gordon against Joseph C. Alexander. From a judgment for plaintiff, defendant brings error. Affirmed.

*Bacon & Palmer*, for appellant.

*J. S. Crandell* and *W. H. Burgess*, for appellee.

MOORE, J. Plaintiff sued defendant in trover. The declaration contained a count claiming special damages for injury to his business and credit because defendant unlawfully took his goods from him. He recovered a judgment of upwards of $1,800. The charge of the court contains a statement of the claims of the respective parties, and is as follows:

"Previous to November 12, 1891, Alexander McDonald

---

[1] Rehearing denied April 3, 1900.

had been engaged in the mercantile business at Tyre, in this county,—general merchandise. At that date he was largely indebted, and on that date he made a sale of his entire business to the plaintiff in this case. On that sale nothing was paid down by the plaintiff, who bought of McDonald, but notes were given by Gordon, the plaintiff, and taken by McDonald as a consideration for that purchase. It appears from the undisputed testimony that those notes were payable on demand, which fact made them payable immediately, and that Gordon went into possession of the business and the stock of goods; that some time in March, 1892, Allan Shelden, a creditor of McDonald, procured an attachment from this court, and attached and took possession of the entire stock in Gordon's possession, and afterwards made a sale of it, and closed out the stock and business. Now, this action is brought by Mr. Gordon, as plaintiff, claiming that he was the actual, *bona fide* owner of that stock of goods, and that he is entitled to recover in this action. His claim is, the value of that stock of goods, as being the owner, and having been wrongfully deprived of them.

"Now, the defense meet that claim of ownership by this claim,—that the sale by McDonald to Gordon was a fraudulent sale; and they make the particular claim that it was made with the intent to hinder and delay McDonald's creditors in the collection of their debts. They claim that, so far as Gordon's purchase was concerned, it was not a *bona fide* purchase, within the law, because there was no actual consideration paid, as they claim; the consideration being evidenced by notes, simply. The defendant claims that the facts and circumstances concerning the transaction were such as to indicate that the transfer was fraudulent on McDonald's part, at least; and they also claim that it was fraudulent so far as Mr. Gordon was concerned. They claim that he had notice from the facts and circumstances of the conditions under which the sale was made. Now, gentlemen, the first prime question of fact for you in this case is this: Was the sale by McDonald, on McDonald's part, a fraudulent sale? It will not matter, under some phases of the law, whether Gordon knew of that fraud or not, as I shall explain to you hereafter. The first prime question is, What was McDonald's purpose, or what was the effect as to creditors of his acts, under these circumstances? Now, the testimony, as I have said to you, indicates a certain condition of the affairs

of Mr. McDonald at that time,—that he was very largely in debt, in excess of any visible property in the business there; that demand had been made upon him for payment, and that conversations had been had with representatives of the defendant in this case, Mr. Shelden, and that following these conversations this sale was made; that no money was paid down upon that sale; and that demand notes were taken. From these principal facts, and the facts that the parties connected with the transaction were relatives, and some other circumstances concerning the transaction, it is claimed by the defendant here that the transfer was, in law and in fact, fraudulent.

"Now, I say to you that question of fact is for you to determine. Now, an act may be fraudulent as to creditors when it was not really intended as such,—when there was no direct purpose. For instance, a man may be in business, and may be very largely indebted; he can sell in the ordinary course of business, from his store, all the articles of merchandise which he has, and such a sale is not fraudulent as to creditors, because that is the only purpose of his business. He is there for that purpose, and his creditors presume that he will sell in the ordinary course of business. And a person under these circumstances may close out his entire stock, and clean up the business; and such an act as that may, under some circumstances, be fraudulent as to creditors, because the creditors have relied, presumably, upon his continuing his business, and that he would pay them from the proceeds of the business, as his business went on in the ordinary course of commercial transactions. Now, I say to you, you have a right to take into consideration all these circumstances existing at this time,—the situation in which Mr. McDonald was as to this creditor, the amount of his stock, the relationship of the parties, the pressure of creditors, and any other circumstances which you have in evidence,—and then determine for yourselves the fact as to whether McDonald's act, of itself, was fraudulent as to these people whom he owed, as putting his visible property beyond the reach of their process, or of delaying or hindering the creditors in the collection of their claims. That is the first question for you to determine. If you find that McDonald's transactions there in that respect hindered or delayed, or had the effect to hinder or delay, the creditors in the collection of their claims, by putting his visible property out of his possession, then that would

be a fraudulent act, within the meaning of the law.   It is for you to say whether it was so, under these facts and circumstances, or not.   Now, if you should find that it was not fraudulent on McDonald's part, then you will find a verdict here for the plaintiff.

. "If you find that it was fraudulent on his part, then there would be other questions for you to determine, as to the amount,—whether any recovery can be had or not. If you find that it was fraudulent, and that his stock was subject, under the law and under these instructions, to the attachment, then there would be the other question, as to whether Gordon had notice of McDonald's purpose in the disposition of this stock.   If Gordon knew—had knowledge—that McDonald's purpose was fraudulent, then he cannot recover anything in this case.   But, if he didn't have knowledge that the sale was fraudulent on Mc-Donald's part, then he would be entitled to recover back such sum as he had actually paid, less what he had received from the property.   Now, there may be some difficulty in arriving at that amount, under the testimony here, but you are to take the testimony as near as you can get at it, if you find that Gordon did not have any notice or knowledge of the fraudulent purpose, and determine what he is entitled to.   His testimony is that he paid $608 in money after the sale on the transaction, and that he retained of the property which he received some personal property.   You will recollect that from the testimony.   It is apparent that he must have made some sales from November to March.   It is left in very great doubt what the amount is, but you have the two inventories, and, from all the facts that you may have there, you may determine, under this phase of the case, the probabilities.   You are not required to arrive at that with actual, definite certainty, if you don't have the testimony, but what are the probabilities as to the amount he has had out of that transaction.

"*Mr. Burgess:* And take into consideration the stock afterwards purchased and put in, and the horse and buggy and harness that he sold?

"*Court:* Yes.

"*Mr. Crandell:* I suppose, interest on the amount at 6 per cent. from March, '92?

"*Court:* Yes; to date.

"One further proposition, perhaps, in relation to these notes,—in determining whether a valuable consideration

was paid or not.· Those demand notes, as I say to you, were due immediately, being made upon demand. If there had been a transfer to Mr. McDonald's brother the same day, they would have still been due, and past due, in the hands of the purchaser; so that Gordon, whenever he was attacked upon that sale, could protect himself against those notes in the hands of anybody. They were past due. You may take that into consideration in determining the character of the consideration paid,—whether it was valuable consideration, and whether he has been injured in the transaction otherwise than the payment of the actual money which he has paid upon the transaction."

On the trial the plaintiff was allowed to state what his credit was before his goods were taken, and how it was afterwards. It is claimed this was error, as the measure of damages was the value of the property, with interest, at the time it was taken; counsel citing 2 Greenl. Ev. § 276; *McGuire* v. *Galligan*, 57 Mich. 38; *Woods* v. *Gaar, Scott & Co.*, 93 Mich. 143. I do not think these authorities sustain the contention of counsel, but, on the contrary, they recognize that where special damages are the direct result of the unlawful taking of the property, if they are alleged and proved, they may be recovered. See *Wait* v. *Kellogg*, 63 Mich. 138. The other justices are of the opinion it is unnecessary to discuss or determine this question, because, if it was error, the charge of the court and the verdict of the jury eliminated it. The case was submitted to the jury upon the sole theory that the value of the property seized was the measure of damages, and it is evident that the jury followed the instruction.

The defendant requested the court to charge the jury as follows:

"1. Under the undisputed evidence in this case, your verdict should be for the defendant.

"2. It appears from the undisputed evidence that, at the time Alexander McDonald sold this stock of goods, he was largely indebted to Allan Shelden & Company and other creditors, and that the plaintiff did not pay a valuable consideration for the same, but gave his notes for the purchase price, and under those facts the plaintiff would not be a *bona fide* purchaser, and, if Alexander Mc-

Donald intended to defraud his creditors by the sale of this stock to Gordon, such sale would be void, even if Gordon had no knowledge of such fraud.

"3. If the sale of this stock of goods by Alexander McDonald to plaintiff had the effect of hindering or delaying his creditors, such sale would be fraudulent as to McDonald's creditors, and, the plaintiff not having paid value for the stock, he is not a *bona fide* purchaser; and your verdict should be for the defendant.

"4. Under the undisputed facts in this case, plaintiff can, in any view of the case, recover from the defendant only the amount he had actually paid for the stock, less the amount which he had received from the sale of the horses, buggies, harness, and other goods; and the burden is on the plaintiff to show such amount.

"5. It appears from the testimony of the plaintiff that he has only paid the sum of $608 on the purchase price of the stock of goods and other property which he purchased from McDonald. It also appears from his testimony that he has disposed of the horses, harness, and buggy; that he continued to carry on the business and sell from the stock of goods from November 12, 1891, to March 20, 1892; and, under the undisputed facts in this case, the burden is on the plaintiff to show that he did not receive from such sales a sufficient amount to reimburse him for the sum paid by him on the purchase price; and, the plaintiff not having furnished any evidence from which the amount of such sales can be found, your verdict must be for defendant.

"6. The plaintiff was not a creditor of McDonald, but a purchaser; and, if he had knowledge of facts sufficient to put an ordinarily prudent man on inquiry, such knowledge on the part of Gordon would be sufficient to avoid the sale, without any active participation in the fraud by him.

"7. It appears from the plaintiff's testimony that the paper given by him for the stock of goods was dated the 12th of November, 1891, and was payable on demand, and that such paper has not been paid or renewed in any manner, nor has any suit or proceeding been commenced to collect the same; and I charge you that such paper is barred by the statute of limitations, and is not a valid claim against the plaintiff."

These requests were refused, except as covered by the general charge. The refusal is said to be error. The

first five and the last one of these requests could not be given by the court, under the evidence introduced by the plaintiff. He claimed that he made the purchase of the goods in good faith, without any knowledge of any intention on the part of Mr. McDonald to defraud his creditors, or that the fact of the sale would defraud his creditors. His claim was that, prior to the purchase, he had indorsed Mr. McDonald's note for $300, and as part of the consideration for the purchase he assumed the payment of that note, and afterwards did pay it. He also claims that for some years Mr. McDonald was in partnership with his brother in this same business; that Mr. McDonald and his wife purchased the one-half interest of the brother in the business in August, 1887, for which they gave their notes, some of which were unpaid at the time the plaintiff bought the stock of goods; and that, to apply on this indebtedness, the notes plaintiff gave to apply on the purchase were turned over to the brother, who released Mr. and Mrs. McDonald for a like amount of their indebtedness to him, and after the notes were turned over he had paid on them $308, and promised to pay the balance when this litigation was ended. The brother also claimed that plaintiff had written him, promising to pay the notes as soon as he could. Plaintiff gave testimony tending to prove his claim. The law does not prohibit honest sales of goods upon credit, even though the seller is in debt at the time. It cannot be said that the giving of negotiable notes was not a sufficient consideration for a sale, and it is very clear that a part of the purchase price was paid by plaintiff. *Dixon* v. *Hill*, 5 Mich. 404; *Lewis* v. *Rice*, 61 Mich. 97; *Wait* v. *Kellogg*, 63 Mich. 138. These requests, except the sixth one, assume certain facts to exist, when there is evidence from which the jury might make a different finding. Under such circumstances, they should not be given. *Lewis* v. *Rice*, 61 Mich. 97.

The plaintiff did not claim upon the trial that, when he made the purchase of the stock, he was a creditor of McDonald. This being so, defendant was entitled to have

his sixth request given.  *Hough* v. *Dickinson*, 58 Mich. 89; *Bedford* v. *Penny*, Id. 424; *Allen* v. *Stingel*, 95 Mich. 195.  But, in view of what follows, we think the refusal to give the request worked no harm to defendant. A reference to the general charge of the judge shows that the jury were instructed that, if Gordon knew McDonald's purpose was fraudulent, he could recover nothing, but, if he did not have knowledge it was fraudulent, if it in fact was fraudulent, he would be entitled to recover such sum as he had actually paid, less what he had received from the property.  The judge called the attention of the jury to the fact:  "His testimony is that he paid $608 in money after the sale on the transaction, and that he retained, of the property which he received, some personal property." There was no claim plaintiff had actually paid, at the time of the trial, of the purchase price, more than this amount.  The jury returned a verdict in favor of plaintiff of $1,834.  The inventory made at the time the property was attached by the sheriff shows it was appraised at $1,827.93; so we think it clear the jury could not have returned the verdict they did, without finding the sale by McDonald was not fraudulent.  This being so, it is evident the giving of the sixth request would have made no difference with the verdict.  The plaintiff insisted the sale by McDonald was not a fraudulent sale.  The defendant averred it was a fraudulent transaction.  Each gave testimony tending to support his claim.  The weight of the evidence so given was for the jury.  *Lewis* v. *Rice*, 61 Mich. 103; *Redpath* v. *Brown*, 71 Mich. 258; *Cortland Manfg. Co.* v. *Platt*, 83 Mich. 419; *Ferris* v. *McQueen*, 94 Mich. 367.

A motion was made for a new trial, based upon the errors assigned in the case as it is now here.  The motion was overruled.  There is nothing in the record that makes it our duty to overrule the action of the circuit judge in disposing of this motion.

Judgment is affirmed.

The other Justices concurred.