## Eureka Iron & Steel Works v. Timothy Bresnahan and Horace L. Delano.

*Trover and conversion—Fraudulent conveyances—Pleading—Notice of fraud—Justification of officer—Judgment of competent court —Evidence—Security to creditor by failing debtor— Sale of chattels.*

1. A sheriff justified, in a trover suit for the value of chattel-mortgaged property, under the files and proceedings in *five* attachment suits brought by creditors of the mortgagor, all of which had proceeded to judgment and execution, which writs he had levied upon the property. On the trial it appeared that he had sold the property on *one* of said executions without satisfying the same, whereupon the plaintiff objected to the files and proceedings in the remaining suits as *immaterial*.

    *Held*, that they were *material* as showing defendant's right to possession, and that the mortgagor had creditors at the time of the execution of the mortgage.

2. In an action of trover by a mortgagee for chattel-mortgaged property seized at the suit of attaching creditors of the mortgagor, the mortgage may be shown to be fraudulent under the general issue, but, if a count be added disclosing plaintiff's *source* of title, notice of such alleged invalidity must be given.

3. In actions of trover for goods taken in attachment against a *third* person, the officer must give notice of his attachment in order to justify thereunder. *Fry v. Soper*, 39 Mich 727; *Frankel v. Coots*, 41 Id. 75.

66 489
104 · 207
104 336

66 489
110 119

66 489
112 358

66 489
115 527

66 489
119 450

66 489
124 225

66 489
137 ²572

4. The judgment of a court of record having jurisdiction of the person and subject-matter imports absolute verity as between the parties and their privies; but this rule does not apply to such strangers to the record as would be prejudiced in regard to some *pre-existing* right if the judgment were given full credit and effect.

5. In a suit by a mortgagee against a sheriff and a purchaser at an execution sale for the value of the mortgaged property, which had been seized on several executions issued in favor of judgment creditors of the mortgagor, and on one of which it had been sold, the plaintiff offered to show that the judgment on which said last-named execution was issued was rendered for too large an amount.

   *Held,* that such fact, if established, would not invalidate the judgment, nor injuriously affect the rights of the plaintiff; that, if the property sold for more than was actually due on said execution, the surplus would have to be applied upon the remaining executions in the sheriff's hands, which were more than sufficient to exhaust such surplus; and that said testimony was properly excluded.

   *Held,* further, that if said sale yielded a surplus which might be applied on said mortgage debt, defendants would not be liable in trover, the one for selling and the other for purchasing the property.

6. The law permits a debtor to prefer a creditor, either by way of payment or security, where such security is disassociated with a common-law assignment, and not intended or made for the purpose of hindering, delaying, or defrauding his creditors; and so understood and participated in by the creditor taking such security; and such a transaction cannot be assailed by the other creditors of the debtor. If such a conveyance is made to defraud creditors, it must be because the debt is fictitious in whole or in part, and so intended for a mere cover, or given upon such length of time as raises a presumption that its purpose was to hinder or delay creditors, or is so disproportionate to the debt secured as to operate as a cover to shield the property from attachment liens or executions; in all of which cases it follows as a necessary sequence that the mortgagee must *know* the fact, and must necessarily have participated in the fraudulent intent.

7. In discussing the question of fraudulent conveyances of personal property, the Court refer approvingly to the following decisions:

   *a*—" The laws of this State allow a debtor to prefer one creditor to another, and to use any of his property in the payment or security of his honest debts in such order as he may select." *People v. Bristol,* 35 Mich. 34.

   *b*—" A debtor may always give a *bona fide* security for any

claim against him, and fraud is a question of *fact*, and not of *law*, in all cases where there is no statute to the contrary, and where an honest effect is possible." *State Bank v. Chapelle*, 40 Mich. 451.

*c*—" Although it should appear that the object of a mortgagor was fraudulent as to creditors, yet, if it also appears that the mortgage was made to secure an *honest* debt, it is valid unless the fraudulent purpose of the mortgagor was participated in by the mortgagee." *Andrews v. Fillmore*, 46 Mich. 316.

*d*—" A mortgage taken without fraudulent intent, to secure no more than the actual debt of the mortgagee, is not open to any attack as fraudulent." *Adams v. Niemann*, 46 Mich. 136.

*e*—A purchaser in good faith, and for value, of chattels, acquires a title which cannot be affected by any intent on the part of his vendor in making the sale to hinder or delay creditors. *Spring Lake Iron Co. v. Waters*, 50 Mich. 13.

*f*—" A fraudulent intent on the part of the vendor of personal property, and notice or knowledge of such intent on the part of the vendee, is sufficient to avoid the sale, without any proof what ever of *actual* fraudulent intent on the part of the vendee." *Hough v. Dickinson*, 58 Mich. 94.

*g*—" *Knowledge* by a purchaser of facts sufficient to put an ordinarily prudent man on inquiry [where the sale is attacked as fraudulent as to creditors] is all that is required, and *participation* in the fraud is not necessary." *Bedford v. Penny*, 58 Mich. 428.

Error to Muskegon. (Russell, J.) Argued April 29, 1887. Decided June 23, 1887.

Trover for chattel-mortgaged property. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Keating & Dickerman* (*John H. Bissell*, of counsel), for appellant.

*Smith, Nims, Hoyt & Erwin*, for defendants.

CHAMPLIN, J. Plaintiff brought trover for certain chattels. The declaration is in the usual form.

The defendants pleaded the general issue, and gave notice that Bresnahan, as sheriff of the county of Muskegon, seized and levied upon the goods and chattels named in the plaint-

iff's declaration by virtue of five certain writs of attachment issued out of the circuit court for the county of Muskegon against the goods and chattels of the Woodard Manufacturing Company, and in favor of certain plaintiffs therein, and particularly describing each of said attachment writs; that judgments were recovered in each of said suits, and subsequently executions were issued upon said judgments, and levied upon said goods, which were advertised and sold to Horace L. Delano, he being the highest bidder at said sale, by virtue of which he became the owner of said property.

A trial was had, which resulted in a verdict for the defendants.

Upon the trial the plaintiff introduced in evidence a chattel mortgage, executed by the Woodard Manufacturing Company to the Muskegon Novelty Iron Works, and an assignment thereof by the last-named corporation to the plaintiff, which constituted the basis of the plaintiff's claim to the property in question. Plaintiff showed a demand of the property before suit brought, and the sale thereof by Bresnaham to his co-defendant.

The defendants put in evidence the files and records of the several attachment suits set up in their notice. The fact appeared that the property was sold upon one of the judgments, and failed to fully satisfy it, and plaintiff's counsel claim that the files and records in the other attachment suits thereupon became immaterial, and the admission thereof in evidence was error. Not so. They were all levied upon the goods in question, and it was proper to show such suit, not only for the purpose of showing the sheriff's right of possession of the goods, but also for the purpose of showing that the Woodard Manufacturing Company had creditors at the time the mortgage in question was executed.

The defendants also offered evidence tending to show that the chattel mortgage under which the plaintiff claimed was fraudulent and void as to the creditors of the Woodard

Manufacturing Company, as having been made to hinder, delay, and defraud such creditors in the collection of their debts. The plaintiff claims that such testimony was not admissible under the pleadings. No fraud is pleaded, and no attack is made in the pleadings upon the legal validity of the chattel mortgage.

To this the defendants reply that the declaration does not disclose any source of title, nor set up any claim to the property in question under the chattel mortgage; that in an action of trover the plaintiff is not bound to disclose his source of title, nor is the defendant bound to anticipate under what source of title the plaintiff may claim; and that it is sufficient to meet the claim made upon the trial with counter-proof to show that such claim has no legal validity.

Owing to the indefinite character of pleadings in trover, this must necessarily be so. The testimony was purely rebutting to that introduced on the part of the plaintiff to establish its ownership to the property. Had plaintiff added a count in trespass on the case setting out its source of title, the defendants would have been called upon, if they assailed it on the ground of fraud to have put that question in issue by pleading it.

We are cited by plaintiff's counsel to the general rules of practice of 4 Wm. IV (1833), as authority for their position that the general issue in trover is a denial of the conversion only, and not of plaintiff's title to the goods. But these rules have not been adopted into our practice, and the general issue in this State, as formerly in England, puts the whole declaration in issue. To entitle the plaintiff to recover two points are essential to be proved:

1. Property in himself, and a right of possession at the time of conversion.

2. A conversion of the goods by the defendant to his own use.

And under the general issue the defendant may prove 1 y

any competent evidence that the title to the goods was in himself, either absolutely as general owner, or specially as bailee, or by way of lien.

It was held in *Fry v. Soper*, 39 Mich. 727, and in *Frankel v. Coots*, 41 Id. 75, that, in actions of trover for goods taken in attachment against a third person, the officer must give notice of his attachment, in order to admit evidence of justification thereunder. The reason for this is that although it is permitted to show paramount title in a third person or stranger to defeat the action under the general issue, or to mitigate damages, yet it is not enough to set up title in a third person, but it must be followed by proof showing some right or claim to the goods derived by the defendant from the true owner. *Earl v. Camp*, 16 Wend. 562, 571; *Duncan v. Spear*, 11 Id. 54, and note, page 57.

The earlier cases in New York, following the practice in England before the adoption of the rules above re erred to, permitted evidence, under the general issue in trover, to show title in a third person, in defense of the action. *Schermerhorn v. Van Volkenburgh*, 11 Johns. 529; *Kennedy v. Strong*, 14 Id. 128; *Rotan v. Fletcher*, 15 Id. 207. The case last cited was where a levy had been made, and defendant relied upon a fraudulent sale of the property.

The correct rule is laid down by Barons Parke and Alderson in *Samuel v. Duke*, 6 Dowl. 544, that in trover against a sheriff who has levied under *fi. fa.*, if the act of conversion be the seizure of goods, a justification under the writ must be specially pleaded; but, if the conversion be the sale of the goods, the justification may be given in evidence, under a plea denying the plaintiff's right of possession. It is held that this plea, denying the plaintiff's right of possession, is equivalent to the general issue under the former practice; and under it the defendant may show that the goods belonged to a third person. *Leake v. Loveday*, 4 Man. & G. 972.

The rule recognizes the distinction that before sale the sheriff has a mere lien upon the goods, or special property in them, and therefore notice is requisite; but after sale the title of the former owner is divested, and passes to the purchaser, and in an action subsequently brought no notice is necessary.

It follows from what has been said that the errors assigned, based upon the insufficiency of the notice relative to testimony tending to show that the chattel mortgage under which plaintiff claims was void for fraud, cannot be sustained.

Plaintiff offered to show that the judgment obtained by the plaintiffs in the attachment suit under which the sale was made was obtained by fraud and collusion, and that it was taken for too large an amount. The files and records introduced showed that the Woodard Manufacturing Company had appeared by its attorney and pleaded to the action, and afterwards had withdrawn the plea, and judgment was taken by default; and the plaintiff proposed to show that this was done by collusion. The circuit judge excluded the testimony.

It is a well-settled principle of law that the judgment of a court which has jurisdiction of the person and subject matter is binding until reversed, and cannot be attacked collaterally. No offer was made to show that the court had no jurisdiction over the person of defendant or subject-matter; on the contrary, the record showed due service, and the court had jurisdiction of the subject-matter. The record, therefore, imported absolute varity, and could not be contradicted. But this rule applies only to parties and their privies. It does not apply to such third persons, or strangers to the record, as would be prejudiced in regard to some pre-existing right if the judgment were given full credit and effect.

The plaintiff claims that it occupies that position. No

doubt the claim of the plaintiff in this respect is correct. It is necessary, therefore, to consider how the question to which the assignment of error is directed came up, and the ruling of the court thereon, as sl. n by the record.

It arose in this wise, and I quote from the record:

"The plaintiff further recalled Charles E. Woodard, a witness who had previously sworn in the case, and witness was asked:

"*Q.* 'Do you know how much the Woodard Manufacturing Company owed Ames & Frost or the Temple Manufacturing Company on the second of June, 1885?'

"*Counsel for Defendants.* 'What is the object of it?'

"*Counsel for Plaintiff.* 'The object is to show that they did not owe any such amount as the judgment was taken for.'

"*The Court.* 'Has not that been passed upon?'

"*Counsel for Plaintiff.* 'No, sir.'

"*The Court.* 'And was not a judgment entered of the amount due? Have you authority that you can come in in that way and attack a judgment?'

"*Counsel for Plaintiff.* 'It is proper for us to make a statement of what we propose to prove.'

"*The Court.* 'I will sustain the objection;' to which ruling the plaintiff by its counsel did then and there except.

"*Counsel for Plaintiff.* 'Plaintiff proposes to show by testimony that at the date of the entry of judgment in favor of Ames & Frost, by direction of the president of the Woodard Manufacturing Company, all of the debt claimed under the plaintiffs' declaration in that case had been paid before that time by the Woodard Manufacturing Company, excepting two hundred and nine dollars on book account, and five hundred dollars on the promissory note, a copy of which was attached to plaintiffs' declaration in that suit; and the plaintiff claims that that fact, in connection with the other facts already shown by the files and records of that case (*Ames & Frost v. Woodard Company*), and the testimony as to the withdrawal of the plea under the direction of the president of the company, are evidence tending to prove fraud and collusion, proper to be submitted to the jury upon the question of whether or not that judgment was void as against this plaintiff. I understand the court makes the ruling on this offer.'

"*The Court.* 'Yes, sir; and the reason of the ruling is that they came here before the court when the judgment was

entered and passed upon, and the amount was then determined from the evidence which was offered.'

"To which ruling the plaintiff by its counsel did then and there except."

The evidence offered, instead of tending to establish fraud, simply tended to show that the judgment was rendered for too large an amount.    If such fact should be established, it would not invalidate the judgment, nor would it injuriously affect the right of the plaintiff.    If the property sold for more than was actually due to plaintiffs in the execution, the sheriff would have been obliged to apply the surplus upon the other executions held by him, which were more than sufficient in amount to exhaust such surplus.    Besides, if the sale yielded a surplus over the execution which might be applied to the payment of the mortgage debt held by plaintiff, defendants would not be liable in trover, the one for selling and the other for purchasing the property.    The testimony was properly excluded.

The remaining error assigned is to the refusal of the court to give the plaintiff's eighth request to the jury.    It is as follows:

"The intention to delay or defraud creditors must be an intention on the part of the mortgagor and mortgagee in order to vitiate the chattel mortgage.    It could not have that effect in this case if such intention existed only on the part of the officers of the Woodard Manufacturing Company."

In *Andrews v. Fillmore,* 46 Mich. 316, a charge was requested to the effect—

"That, although it should appear that the object of the mortgagor was fraudulent as to creditors, yet, if it also appeared that the mortgage was made to secure an honest debt, it would be valid unless the fraudulent purpose of the mortgagor was participated in by the mortgagee."

The circuit judge refused to give the instruction; and ruled substantially that, if the intent of the mortgagor was fraudulent as against the execution creditor, the mortgage, though

66 MICH.—32.

given for an honest debt, and received by the mortgagee in perfect good faith, could not be sustained against the execution. This Court held that the circuit judge was in error, and that the instruction asked for should have been given; citing *State Bank v. Chapelle,* 40 Mich. 447; *People v. Bristol,* 35 Id. 28; and *Adams v. Niemann,* 46 Id. 135.

In *State Bank v. Chapelle,* 40 Mich. 451, the Court said:

" The doctrine is too elementary to bear discussion that a debtor may always give a *bona fide* security for any claim against him and that fraud is a question of fact, and not a question of law, in all cases where there is no statute to the contrary, and where an honest effect is possible."

In *People v. Bristol,* 35 Mich. 34, it was said that—

" The laws of this State allow a debtor to prefer one creditor to another, and to use any of his property in the payment or security of his honest debts in such order as he may select."

In *Adams v. Niemann,* 46 Mich. 136, the court below charged the jury that,—

" If the mortgage was given to secure an honest transaction, debt, or liability, and if it was not given for the sole purpose of hindering and delaying the other creditors of the mortgagor, it was valid."

The Court said:

" If this had been the entire charge on this subject, it is undoubtedly open to misapprehension. We have no doubt a partially wrong purpose may be such as to stand in the way of such a security. But the court, in giving further instructions, put it beyond any doubt that there was no erroneous conclusion justifiable under the whole charge. It was clearly and distinctly laid down that honesty on the part of the mortgagee would not save the instrument if there was any fraud or wrong in the other. And the jury, by special findings, made the instruction unimportant. They found expressly that neither of the mortgagees took the mortgage with any unlawful intent. And they further found that the debts intended to be secured were somewhat larger at the date of the mortgage than the whole sum secured, which was five thousand dollars. A mortgage taken without fraudulent

intent, to secure no more than the actual debt of the mort-gagees, is not open to any attack as fraudulent."

In *Spring Lake Iron Co. v. Waters,* 58 Mich. 13, it was held that a purchaser in good faith, and for value, of chattels, acquired a title which could not be affected by any intent on the part of his grantor in making the sale to hinder or delay his creditors. In *Hough v. Dickinson,* 58 Mich. 91, 92, the circuit judge instructed the jury that,—

"A fraudulent intent-cannot be inferred by the jury with-out proof, but it must be proved, like any other act, to the satisfaction of the jury; and unless such fraudulent intent is proved on the part of both Pier & Wagley [the vendors], and Hough & Wagley [the vendees], by a preponderance of evi-dence, the verdict of the jury should be for the plaintiffs. * * * To establish fraud in this case on the part of Hough & Wagley, it is not enough for the jury to find that Pier & Wagley sold with intent to defraud their creditors, but defendants must also show that Hough & Wagley partici-pated in that fraudulent intent."

These instructions were held by this Court erroneous, and we said (pages 94, 95) that,—

"A fraudulent intent on the part of Pier & Wagley, and notice or knowledge of such intent on the part of Hough & Wagley, is sufficient to avoid the sale, without any proof whatever of actual fraudulent intent on the part of these latter parties. * * * Actual participation in the fraudu-lent intent of Pier & Wagley, if any, was not necessary to make them liable; but, if they knew or had notice of such intent on the part of the former, the jury might properly find against them."

*Bedford v. Penny,* 58 Mich. 424, was the case of a sale attacked by the execution creditors as fraudulent. The cir-cuit judge charged (page 426) that it was essential for the defendant, not only to make it appear that the sale was made by the vendor with intent to hinder, delay, and defraud his creditors, "but, in addition to this, it must also be estab-lished that the one acquiring title has participated in such intention."

This was held to be error, and this Court said (page 428):

"Plaintiff was not a creditor of the firm, but a purchaser, and the court should have clearly pointed out the distinction, and given the jury to understand in unmistakable language that knowledge on the part of plaintiff of facts sufficient to put an ordinarily prudent man on inquiry is all that is required, and that participation in the fraud was not necessary."

*Frazier v. Passage,* 63 Mich. 551, was a sale of both real and personal property, and the rule is again asserted that, to render a conveyance void for fraud upon creditors, it is necessary that the grantee should have had knowledge of, and in some way have participated in the fraud. This Court found in that case that there were no facts and circumstances surrounding the transaction which were sufficient to put the purchaser upon inquiry.

There is a plain distinction between cases of purchasers from a debtor, and mortgagees from him, where the conveyance is attacked by creditors as fraudulent; not in the rules of law which are applicable to both, but arising from the relations of the parties. In both cases the conveyance must be *bona fide,* and for a valuable consideration. A purchaser is not affected by the fraudulent intent of his vendor unless he has knowledge or notice of such intent, or of such facts or circumstances as would put a prudent man upon inquiry.

A creditor may take a mortgage to secure a *bona fide* indebtedness, and he is not affected by a fraudulent intent of his grantor. The law permits a debtor to prefer a creditor, either by way of payment or security, where such security, is disassociated with a common-law assignment, and where such security is not intended or made for the purpose of hindering, delaying, or defrauding his creditors, and so understood and participated in by the creditor taking the security. The transaction cannot be assailed, by the other creditors of the debtor. If such conveyance is made to

defraud creditors, it must be because the debt is fictitious in whole or in part, and so intended for a mere cover, or given upon such length of time as will raise the presumption that it was given for the purpose of hindering or delaying the creditors, or is so disproportionate to the debt secured as to operate as a cover to shield the property from attachment liens or executions. Then, of course, it is fraudulent and void as to such creditors, in all which cases it follows as a necessary sequence that the mortgagee must know the fact, and must necessarily have participated in the fraudulent intent; and it is difficult to perceive—indeed, it is impossible when the conveyance is fraudulent—that a fraudulent intent should exist in the mind of one party, and not in that of the other.

If, therefore, in this case, the mortgage assailed as fraudulent was given to secure a *bona fide* indebtedness, and for no more than was due, it must stand, notwithstanding the subsequent attachments of other creditors. This was plaintiff's theory; and, if the jury so found the facts, plaintiff was entitled to the charge of the court based upon that theory. The question is, did the court correctly give the law to the jury? The court, at the request of the plaintiff, charged the jury as follows:

"1. The chattel mortgage given by the Woodard Manufacturing Company to the Muskegon Novelty Iron Works, having been executed by the secretary and treasurer of the Woodard Manufacturing company, is *prima facie* valid.

"2. If given for a valuable consideraton, it is valid, unless it appears by a preponderance of the evidence that it was given for the purpose of defrauding the creditors of the Woodard Manufacturing Company.

"3. The Woodard Manufacturing Company had a right to prefer the Muskegon Novelty Iron Works as a creditor, and to secure it for what it owed it, before it paid any other indebtedness.

"4. If the purpose of giving the chattel mortgage to the Muskegon Novelty Iron Works by the Woodard Manu-

facturing Company was to secure a just debt, and only to prevent other creditors from getting ahead of the Muskegon Novelty Iron Works in collecting or securing its claim, such purpose was lawful, and the mortgage is not therefor invalid."

"6. Notwithstanding the Woodard Manufacturing Company may not have owed the Muskegon Novelty Iron Works, at the time the chattel mortgage was given, the entire amount of the consideration named in said chattel mortgage, still, if the Muskegon Novelty Iron Works was doing work and repairs for and furnishing material to the Woodard Manufacturing Company, and this excess of consideration in the chattel mortgage was put in to secure such work, repairs, and material, to be done and furnished in the future, the mortgage would not on that account be invalid.

"7. A conveyance or security made to pay or secure an honest debt will be good, although the debtor may know the effect wil be to hinder and delay other creditors, if there is no intention to defraud them."

He also charged the jury, in lieu of the fifth request, that—

"A sale and application of property to the payment of a *bona fide* debt, or the giving of a chattel mortgage thereon, is not fraudulent, although the party intended to obtain security for his claim, and expected that such security would have the effect to prevent other creditors from levying on or attaching the property."

The foregoing charges, as given, covered the points in issue, and were sufficiently clear and explicit. The fault in the request which was refused by the court, consists in the omission of the statement, "if the mortgage was given for a *bona fide* indebtedness;" and it would have been error to grant the request as written. The *bona fides* of the debt is a *sine qua non* in all cases where the conveyance is made by the debtor with intent to defraud his creditors. If that exists, then it is immaterial that the creditor knows of the fraudulent intent of the debtor, and the mortgage would be valid, whether he participated in such fraudulent intent or

not; for, as before stated, if such fraudulent intent existed in the mind of the mortgagor, it would only be a fraud in intent, and not in fact.

I think the charge covered the law of the case, and that the judgment ought to be affirmed.

The other Justices concurred.