WILLIAMS *v.* BROWN.

1. PLEADING—AFFIRMATIVE DEFENSE—NOTICE.
    Cir. Ct. Rule 7, subd. *b*, requiring notice of affirmative defense
    relied upon to defeat or avoid the legal effect of the cause of
    action set forth by plaintiff, has no application to actions of
    trover and replevin where the declaration does not allege
    plaintiff's source of title.

2. WITNESSES—CROSS-EXAMINATION—TAX STATEMENT—PRIVILEGE.
   Under 1 Comp. Laws, § 3846, a tax statement made by a tax-payer may not be used on his cross-examination as a witness on the issue of the value of the property in question.

3. EXEMPTIONS—FRAUDULENT VENDEE—SELECTION—WAIVER.
   Whether a fraudulent vendee is entitled to claim the exemption which his fraudulent vendor is entitled to under 3 Comp. Laws, § 10326, or not, no duty to make the selection is imposed by statute on an officer attaching the property on a claim against the vendor, and the vendee must notify the officer, and demand the right of selection, or be held to waive it.

4. FRAUDULENT CONVEYANCES — SALES OF GOODS — CHANGE OF POSSESSION—PRESUMPTIONS.
   Section 9520, 3 Comp. Laws, making every sale of goods unaccompanied by immediate delivery and followed by an actual and continued change of possession presumptively fraudulent and void as against the vendor's creditors, applies to prior, as well as subsequent, creditors of the vendor.

Error to Bay; Shepard, J.   Submitted June 16, 1904. (Docket No. 28.)   Decided September 14, 1904.

Trover by Ira E. Williams against John R. Brown, sheriff of Clare county, for the conversion of certain goods seized on attachment. There was judgment for defendant, and plaintiff brings error. Reversed.

Plaintiff's two sons, trading as Williams Bros., owned and operated a mill, with a store in connection therewith. They did not own the land upon which the mill was situated.   They also owned a half interest of the Harrison Cooperage Company, a copartnership. The firm owned the mill and machinery, but not the land on which the mill was located.   The sons were married men, with families, and had no other business than that above described, which they had carried on since 1893.

March 21, 1900, the sons executed to the plaintiff a bill of sale of all the above interests, the consideration named being $5,833.73, of which plaintiff claimed he paid $3,000 in cash, and a receipt for $2,833.73, claimed

to be due from them to him. The sons continued in possession of the property, and carried on the business in substantially the same way as before, under power of attorney given them by plaintiff. One Alderton was an indorser for the sons, paid the notes, and on July 27, 1900, brought suit by attachment against the sons, and attached the mill machinery, above described, and the lands, which the sons occupied as homesteads. Soon thereafter plaintiff instituted this suit in trover against the defendant, the sheriff of the county, upon the theory that the defendant had converted the property, and was liable for its value. Defendant attached to his plea' a notice that he seized the property under his writ of attachment; that judgment had been rendered for the plaintiff therein; that he could show that the property when seized was not the property of the plaintiff in trover, but was the property of Charles and Lafayette, plaintiff's sons; and that plaintiff, as against the defendant, had no right, title, or interest in said property. Defendant gave evidence tending to show that before Alderton indorsed the notes, plaintiff said to the agent of Mr. Alderton's firm, which was then selling goods to the sons, that the sons did not owe him (plaintiff) anything. The record also states that "the cross-examination of the plaintiff tended to show that there was no indebtedness from Williams Bros. to the plaintiff at the time of the making of the bill of sale of March 21, 1900." The record also states that defendant gave testimony tending to prove that the bill of sale was made with intent to delay, hinder, and defraud their creditors, and that Williams Bros. were not then indebted to the plaintiff in any sum whatever. The jury rendered a verdict for the defendant.

*F. A. Lyon*, for appellant.

*James H. Davitt* (*A. J. Lacey*, of counsel), for appellee.

GRANT, J. (*after stating the facts*).  Four questions
are presented:

(1) Was the notice of special defense sufficient to admit
evidence of fraud ?

(2) Was certain testimony in regard to tax statements
made by Lafayette admissible ?

(3) Was plaintiff entitled to recover the value of the
exemptions of his sons?

(4) Was the burden of proof upon the plaintiff to show
the bona fides of the sale ?

1.  Plaintiff relies upon Cir. Ct. Rule No. 7 of the revised
rules of practice (subdivision " *b* "), which reads as fol-
lows:

" An affirmative defense, such as payment, release, sat-
isfaction, discharge, license, fraud, or failure of consider-
ation in whole or in part, and any defense which, by other
affirmative matter, seeks to avoid the legal affect of, or
defeat the cause of action set forth in plaintiff's declaration,
must be plainly set forth in a notice added to the defend-
ant's plea."

The application of the rule to this case would be mani-
festly unjust.  Plaintiff's declaration gives no intimation
as to the source of his title.  The defendant was not call-
ed upon either to plead to, or give proof of, his ground for
attacking plaintiff's title until he had shown what his title
was.  If plaintiff had set forth a special count, alleging
the purchase and bill of sale from his sons, the rule would
have been applicable, and notice of the fraud would have
been necessary.  *Wait* v. *Kellogg*, 63 Mich. 144 (30 N.
W. 80); *Eureka Iron & Steel Works* v. *Bresnahan*, 66
Mich. 489 (33 N. W. 834).  The rule does not cover actions
of trover and replevin, where the declaration does not
allege plaintiff's source of title.  Title in third persons
may be shown in actions of trover to defeat plaintiff's ac-
tion.  *Ribble* v. *Lawrence*, 51 Mich. 569 (17 N. W. 60);
*Wessels* v. *Beeman*, 87 Mich. 481 (49 N. W. 483).

2.  The statute provides that no tax statement made by
a taxpayer " shall be used for any other purpose except
the making of an assessment for taxes as herein provided,

or for enforcing the provisions of this act." 1 Comp. Laws, § 3846. When the tax statement was offered in evidence, the offer upon objection was withdrawn, and everything that had been said in regard to it stricken out.

Afterwards Lafayette Williams was a witness. The value of these mill properties was evidently considered material as bearing upon the bona fides of the alleged sale. He had testified that their value was from $2,500 to $3,000. The tax statement was then placed in his hands after the court had again ruled it out, and he was asked, and required under objection to testify, what values he then placed upon the properties. These values were very much lower than those to which he had testified on direct examination. The effect was to place the contents of these statements before the jury as effectually as though they had been introduced and read before them. We think this was within the prohibition of the statute. The purpose of the statute evidently is to make such statements privileged, except for the use specified in the statute. The language of the statute is emphatic and unambiguous. It prohibits their use for any other purpose than the making of an assessment and enforcing the provisions of the law. The effect inevitably was to discredit the witness before the jury. It was error to place them in the hands of the witness, and elicit from him their contents. We are unable to say that it was harmless error.

3. It is next urged that plaintiff purchased all the property which his sons had in the business; that he thereby was subrogated to the rights of his sons in the exempt property; that plaintiff had a right to select these exemptions; and that, having made no selection, it was the duty of the attaching officer to set them off to him. No specific articles of this property were exempt, only goods out of a larger bulk were subject to selection as exempt. The sons did not, and were not in position to, ask for exemptions. They remained in possession, sold goods to the amount of $1,000, and paid the money to plaintiff before the attachment was levied. The statute exempts property only to

the debtor, and gives only the debtor or his agent the right of selection. It does not require the attaching or levying officer to select exemptions for any other than the debtor. 3 Comp. Laws, § 10326. The officer could not well know the conditions of the sale between his sons and the plaintiff, or the arrangement, if there was any, in regard to the exemptions. The plaintiff did know, and it was his duty, if he desired to claim exemptions by virtue of his purchase, to notify the officer, and demand the right of selection. Where no duty of selection is imposed upon the officer, the debtor waives his right to the exemption if he fails to demand it. *Stanton* v. *French*, 83 Cal. 194 (23 Pac. 355); *Harrington* v. *Smith*, 14 Colo. 376 (23 Pac. 331, 20 Am. St. Rep. 272). Whether a fraudulent vendee is entitled to claim the exemption of his fraudulent vendor, where the property levied upon is in excess of the exemption, quære; but if he is, inasmuch as the statute imposes no duty upon the officer to make selection in such case, the vendee must notify the officer, or be held to waive his selection.

4. The statute makes every sale of goods unaccompanied by immediate delivery, and followed by an actual and continued change of possession, presumptively fraudulent and void as against the vendor's creditors. 3 Comp. Laws, § 9520. Counsel for the plaintiff contends that where a sale is made after the purchase, there is no such presumption, and the burden of proof is on the attaching or levying creditor. To sustain this contention would virtually nullify the statute. Under it a debtor might purchase goods to a large amount on credit on Monday, on Tuesday execute a bill of sale to a third party, continue in the possession, use, and control of the goods as before the pretended sale, and the statute would make such a sale presumptively honest. The bare statement of the proposition shows its unsoundness. Every such sale is presumptively fraudulent as to all creditors.

Judgment reversed, and new trial ordered.

The other Justices concurred.