PEASE v. JENNINGS.

1. EVIDENCE — PRIVILEGED COMMUNICATIONS — STATUTORY STATEMENTS AS TO ASSESSABLE PROPERTY.

Under the provisions of 1 Comp. Laws, § 3846 (1 How. Stat. [2d Ed.] § 1791), making the sworn statement of a taxpayer received by supervisor or assessor, relative to assessable property privileged, and forbidding the use

thereof for any other purpose, it was not erroneous on the trial of an action for converting assets of an estate to receive evidence of statements made orally by decedent to the supervisor as to his personal property subject to assessment; no written statement having been made by the taxpayer.

2. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECE-DENT—EXECUTORS AND ADMINISTRATORS.

The testimony of children of a deceased son who, under the will, took their father's part of the property of the estate bequeathed, were not opposite parties whose testimony was excluded by 3 Comp. Laws, § 10212 (5 How. Stat. [2d Ed.] § 12856), relating to matters equally within the knowledge of decedent.

3. EVIDENCE—HEARSAY—STATEMENTS OF DECEDENT.

On the issue whether defendant received certificates of deposit of decedent as a gift, statements of the testator showing a hostile feeling toward defendant, were not improperly admitted to show the relations between them and a state of feeling inconsistent with the claimed gift.

Error to Hillsdale; Chester, J. Submitted October 7, 1913. (Docket No. 5.) Decided March 27, 1914. Rehearing denied December 19, 1914.

Assumpsit by Albert A. Pease, as administrator of the estate of Charles Jennings, deceased, against Abner Jennings for the conversion of certain certificates of deposit. Judgment for plaintiff, and defendant brings error. Affirmed.

*A. L. Guernsey* and *Fellows & Chandler,* for appellant.

*Frankhauser & Cornell,* for appellee.

MOORE, J. The plaintiff sued the defendant for the conversion of two certificates of deposit, one for the sum of $1,000 and one for the sum of $50. The case was tried before a jury. From a judgment in favor of the plaintiff, the case is brought here by writ of error.

The family of Charles Jennings, Sr., consisted of himself and wife, his daughter Ella, and two sons Charles, Jr., and Abner. In 1875 Abner bought a farm of 40 acres near his father. The father and two sons worked both farms, and from the proceeds the 40 acres was paid for; the final payment being made about the year 1882. From then on the defendant worked his farm. Charles, Sr., and Charles, Jr., worked the home farm, which was the home of both of them. In 1888 Charles, Sr., made a will giving to Ella $600, Abner $100, and to Charles, Jr., his personal property and the home farm, subject to the life use of the widow, Rhoda Jennings. Between the time of making the will in 1888 and his death, Charles, Sr., accumulated upwards of $1,000 which he put in the bank, receiving therefor certificates of deposit payable to Charles Jennings, Sr. Charles Jennings, Jr., died in February, 1910, leaving a widow, Carrie Jennings, and four daughters.

In the spring of 1910, but after the death of Charles, Jr., Charles, Sr., went alone, using the horse and buggy of Abner, to the residence of John Mercer, and had him draw a will giving the west 18 acres of the home farm to Abner. He executed this will and left it with Mr. Mercer. On the 7th of June following he wrote Mr. Mercer and requested a return of both wills. Later the will of 1888 was delivered for safe-keeping to a Mr. Whitaker. Charles, Sr., died in April, 1911. The will of 1888 has been probated. After the death of Charles, Sr., the defendant presented to the bank issuing them the certificates of deposit in controversy here, and claiming to be the owner of them, had new certificates made, first to himself and wife, and later to himself alone. As before stated, this suit was brought for their conversion.

The first group of assignments of error relate to the admission of testimony. It is said the court erred

in allowing Supervisor North to testify as to what defendant told him in the spring of 1911 about his personal property. The witness stated he was a supervisor; that he did not ask Mr. Jennings to fill out and sign a blank statement; that he did not require him to, but made it out himself.

"*Q.* When was it that you were there at his house to take this assessment?

"*A.* Now, I can't tell the exact day, but it was in the first of May, from the 4th to the 8th, anyway.

"*Q.* Now, I ask you to tell what conversation and talk you had with him there, what questions you asked him, and what were his answers, as near as you can remember, as to his owning any personal property?

"*Mr. Fellows:* That we object to because it is privileged.

"*The Court:* Well, you may take the answer, and I will control it later.

"*Mr. Fellows:* Exception.

"*A.* Well, I asked him the usual question. Now, on the farms in the townships, we ask them in regard to their horses and cattle, and such things as is around on the farm, and then it's on the statement, 'Have you any bank stocks, mortgages, notes, credits?' and so on. I read that over to the person I am assessing, and I did that to him. He replied to these questions that he had nothing only the personal property on the farm, the horses and cows. He told me about the team and the cows, and I assessed them at $300; $200 of this was exempt, and I put him on the roll in personal at $100. All I assessed was the stock and stuff on the farm, and he gave in no money or credits.

"*Mr. Fellows:* Your assessment is of the 1st of April; that is what property he had the 1st of April?

"*A.* Yes."

It is insisted this is error, citing section 3846, 1 Comp. Laws (1 How. Stat. [2d Ed.] § 1791), and *Williams* v. *Brown,* 137 Mich. 569 (100 N. W. 786). Section 3842 requires:

"Every owner of property liable to taxation * * * shall make out and deliver to the supervisor or

assessor on demand, a sworn statement of all the property owned or held by him."

Section 3846 provides what shall be done with "all the statements herein required to be made and received by the supervisor or assessor," and has this provision:

"But no such statement shall be used for any other purpose except the making of an assessment for taxes as herein provided, or for enforcing the provisions of this act."

The case of *Williams* v. *Brown, supra,* construed that provision. In that case the tax statement required by law was, in fact, made by the taxpayer. The taxpayer was a witness, the tax statement was put in his hands, and he was cross-examined about it. In the instant case no such statement was made by the taxpayer. The witness was not the taxpayer, and we think the cases are distinguishable, and that the provision of the statute quoted does not apply.

The next group of assignments of error relates to the admission of testimony. We quote from the brief:

"Under the will of the decedent, his farm and personal property were given to his son, Charles, Jr. (the father of witnesses Lulu Hudnut, Lena Giddings, and Lila Jennings, and the husband of the witness Carrie Jennings), and to his heirs forever. It was urged by the plaintiff in the court below that, under the statute designed to prevent the lapsing of legacies (section 9288, 3 Comp. Laws), this property went to the issue of Charles, Jr. This, however, only becomes important in considering the testimony of Carrie Jennings, as it is conceded and insisted by the plaintiff that the children of Charles, Jr., take the property which is involved in this case, provided there is a recovery here. * * * If the plaintiff is correct, and this money is recovered, it will be paid into the hands of plaintiff as administrator, and will go to the four daughters of Charles under this will. Such being the case, we * * * urge upon this court

that the case of *Peirson* v. *McNeal*, 137 Mich. 158 (100 N. W. 458), is upon all fours with the case at bar."

Counsel also cite section 10212, 3 Comp. Laws. *Ripley* v. *Seligman*, 88 Mich. 177 (50 N. W. 143); *O'Neil* v. *Greenwood*, 106 Mich. 572 (64 N. W. 511); and *Shepard* v. *Shepard*, 164 Mich. 183 (129 N. W. 201).

It was not insisted very strongly in the oral argument, nor is it in the brief, that Carrie Jennings, the widow of Charles, Jr., is incompetent, and we will concern ourselves only with the claim that the testimony of the children of Charles, Jr., was incompetent.

Section 10212, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 12856), reads as follows:

"When a suit or proceeding is prosecuted or defended by the heirs, assigns, devisees, legatees, or personal representatives of a deceased person, the opposite party, if examined as a witness on his own behalf, shall not be admitted to testify at all to matters which, if true, must have been equally within the knowledge of such deceased person. * * * Provided, that whenever the words, 'the opposite party' occur in this section it shall be deemed to include the assignors or assignees of the claim or any part thereof in controversy."

Counsel for appellee contend (we quote sufficiently from the brief to indicate the argument):

"We have always supposed, and do now, that it was the purpose of this statute to protect estates; to keep them from being depleted by those who pretend to have had dealings with deceased which had not been closed up before his death. * * * To state it in other words: We have always understood this to be a statute which was designed to put the living and the dead upon the same legal footing; death having closed the mouth of one, precluding him from giving his version of a controversy, the law benignly and justly closes the mouth of the other, so no advantage can accrue to him by the misfortune of the decease of the

first. We have always understood that this statute closes the mouth of the one who is endeavoring to get something out of a dead man's estate; to lessen it; to deplete it. We supposed that it applied to one who had a claim against an estate which we were seeking to establish as a debt against the estate, and thereby take from the property of the man who was dead and could not appear to meet his antagonist face to face.  *   * * The view we take of this situation is that the estate of Charles Jennings, Sr., is one party, and that the defendant here, Abner D. Jennings, is the other party; or it might, without any fear of confusion, be stated that the defendant here is arrayed against the estate and is the 'opposite party' to the estate and to the deceased.  *   *   *

"These heirs whose testimony is claimed to be incompetent, under this statute, are giving evidence in favor of the estate, and are not 'opposite parties' to the estate. Their testimony is not incompetent as to matters equally within the knowledge of the deceased; for they are not seeking to deplete the estate, take something from it, to lessen it, but their testimony tends to preserve it, and keep it from being depleted. The incidental fact, if it be a fact, that, if the plaintiff is successful here, they may or may not benefit from the judgment does not make them 'opposite parties' within the meaning of the statute."

We think it is within the principles stated in *Pendill* v. *Neuberger,* 64 Mich. 220 (31 N. W. 177); *Hillman* v. *Schwenck,* 68 Mich. 293 (36 N. W. 77); *Latourette* v. *McKeon,* 104 Mich. 156 (62 N. W. 153); and *Tabor* v. *Tabor,* 136 Mich. 255 (99 N. W. 4); and that the court did not err in its ruling.

The next assignment of error relates to the testimony of D. H. Carney who said (we quote from the brief):

"He [decedent] seemed to be rather bitter towards Abner in that respect. To use his conversation, he says: 'We sent Ab $75 when he was West, and,' he says, 'by God, he has never paid it back, and I haven't forgot it.' He says 'He has got all he will ever get'— is the conversation that he used."

"This testimony was in the absence of the defendant, and was as to him pure hearsay. It is self-serving in character, and inadmissible.  *   *   *" Counsel citing *Van Fleet* v. *Van Fleet*, 50 Mich. 1 (14 N. W. 671), and several other cases.

In allowing this testimony to come in, the court limited its use to showing the relations of the parties. There are many authorities sustaining the view presented by appellant, but it must be remembered that he is claiming these certificates were given to him. It is the common experience that gifts are ordinarily made only to those for whom the donor has a greater or less regard.

In *Whitney* v. *Wheeler*, 116 Mass. 490, it is said:

"Gifts *mortis causa*, like testamentary gifts, express the state of mind and disposition of the donor towards the donee, and his purpose in regard to the bestowal of his estate. When there is any ground for doubt as to the intent with which a delivery of property was made, or whether in fact its possession was obtained by delivery as a voluntary gift or in some other mode, evidence tending to show a continuous and apparently fixed state of mind and purpose, inconsistent with such alleged gift, existing previously thereto, may have a legitimate bearing upon the case to affect the inferences to be drawn from the facts and circumstances attending the transaction."

In *Whitwell* v. *Winslow*, 132 Mass. 307, it is said:

"On the issue whether the gift of a promissory note was made, statements of the alleged donor, who died before the trial of an action on the note, at different times before and after the alleged gift and inconsistent therewith, are admissible to contradict the testimony of the donee, although not made in the donee's presence."

In Thornton on Gifts, § 222, it is said:

"So prior declarations of the donor in his favor are admissible if they tend to show a continuous and apparently fixed state of mind and purpose in him, inconsistent with the alleged gift to contradict the testi-

mony of the donee." Citing *Sherman* v. *Sherman*, 75 Iowa, 136 (39 N. W. 232), which case supports the text.

We think the situation disclosed by the record distinguishes the instant case from those cited by appellant. This brings us to the question of whether there should have been a directed verdict.

The judge charged, in part, as follows:

"The sole question for you to determine from all the evidence in this case is whether or not these certificates were the property of Charles Jennings, Sr., at the time of his death, or whether they were the property of Abner Jennings at the time Charles Jennings, Sr., died.

"And in this case, gentlemen, you are not to determine the question of whether Charles Jennings, Sr., was mentally competent or not, or the question of undue influence; for, under the evidence in this case, you are instructed that the evidence does not show mental incompetency or undue influence.

"Now, regarding the possession of these certificates by the defendant, if you find from the evidence that these certificates were indorsed by Charles Jennings, Sr., then the possession of these certificates by Abner Jennings is *prima facie* evidence of title in him (Abner), and creates the presumption that they were delivered to him, and that his possession is lawful; delivered to him in the lifetime of Charles Jennings, Sr. You are, however, to determine the question of whether or not his possession is lawful from all the evidence in the case, and find whether or not this presumption and this *prima facie* evidence is met and overcome by the testimony in the case bearing on the question of whether or not these certificates were given by Charles Jennings, Sr., to the defendant before the death of Charles Jennings, Sr., on April 18, 1911.

"The burden of proof, gentlemen, is upon the plaintiff in this case; that is, the burden of proving that these certificates were the property of Charles Jennings, Sr., at the time of his death is upon the plaintiff. It is his duty to prove this fact by a preponderance of the testimony; that is, there must be more evidence in favor of this claim that he asserts than

there is against it. This does not necessarily mean numbers of witnesses, but it means that testimony which carries conviction to your judgment."

In view of the fact that decedent left a will giving to Charles, Jr., his personal property, the testimony of the supervisor which we have already quoted, what occurred on the visit of the judge of probate in the presence of the defendant, we do not think the trial judge would have been justified in directing a verdict.

The judgment is affirmed.

MCALVAY, C. J., and BROOKE, KUHN, STONE, OS-TRANDER, BIRD, and STEERE, JJ., concurred.