McCrary, C. J.
Tlie relator recovered judgment in this court, February 5, 1879, against Howard county, for $5,258.80. The judgment was upon coupons detached from bonds issued by said county July 1, 1869, under the provisions of “An act to facilitate the construction of railroads in the State of Missouri,” approved March 23, 1868, known as the “Township Aid Act.” The bonds were issued by said county in behalf of Chariton township, in pursuance of a vote of the people of that township, as provided by said act, and in payment for a subscription to the stock of the Missouri & Mississippi Railroad Company.
An alternative writ of mandamus was issued on the ninth of September last, commanding respondents to levy and cause to be collected, in the same manner as county taxes, a special tax on all the property, lying and being in said township, made taxable by law for such purposes. To the return of the respondents to this alternative writ a demurrer is interposed, which presents for our consideration the following questions:
First. Whether, under the act of 1868, above cited, the respondents are authorized to levy a tax üf mero than one-twentieth of 1 per cent, per annum for the payment of interest and principal of the aforesaid bonds.
Second. Whether such tax shall be levied upon real estate alone, or upon both real and personal property.
Upon the first question it is insisted, by counsel for the respondents, that the power of taxation conferred by the act of 1868 is limited and restricted, by section 13 of the act to “incorporate the Missouri & Mississippi Railroad Company,” approved February 21, 1865. That section is as follows: “It shall be lawful for the corporate authorities of any city or town, the county court of any county desiring so to do, to subscribe to the capital stock of said company, and may issue bonds therefor, and levy a tax net to exceed one-twentieth of 1 per cent, upon the assessed value of taxable property for each year.” Sess. Laws of 1865, p. 88.
*3 It will be observed that this was a provision for subscriptions by counties and cities to the stock of that particular company without a vote of the people. It was, in my judgment, a limitation upon the power of taxation to pay subscriptions made under that act, and has no application to a subscription made under the act of 1868. This is reasonably plain upon the face of the section itself, for it authorizes the subscription, and at the same time prescribes the mode of levying taxes for its payment.
The one is evidently to be referred to the other; the taxation authorized is for the payment of the subscription provided for, and was not intended to be applied to subscriptions to be received by the company from other sources and under subsequent legislation. But if this question were doubtful under the terms of the original charter, it is made clear by reference to the act of 1868, under which the subscriptiox was made.
Section 2 of that act is as follows: “In order to meet the payments on account of the subscription of the stock, according to its terms, or to pay the interest and principal on any bond which may be issued on account of such subscription» the county court shall, from time to time, levy and cause to be collected, in the same manner as county taxes, a special tax, which shall be levied upon all the real estate lying within the township making the subscription, in accordance with the valuation then last made by the county assessor for county purposes.”
There is nothing in this language which indicates a purpose on the part of the legislature to limit the taxes to be levied to such as the charter of the company subscribed to might authorize. If such a purpose had existed, it would certainly have found expression in the act. The contrary is quite clearly expressed.
The act is complete in and of itself, and to incorporate into it the thirteenth section of the charter of the M. & M Railroad Company would only tend to render its terms confusing and contradictory. It makes no reference to any other act. Section 1 authorizes subscriptions to “any railroad *4 company in this state, building or proposing to build a railroad into, through or near” the township voting the subscription. The act was adopted as a new and independent means pf facilitating “the construction of railroads in the state of Missouri.” Besides, the tax was to be, “to meet the payments on account of the subscription to the stock according to its terms, or to pay the interest and principal on any bond which may be issued on account of such subscription.” The plain meaning is that the tax shall be sufficient for these purposes. I am, therefore, of the opinion that the tax to be levied is not limited to one-twentieth of 1 per cent, but is a tax sufficient to pay relator’s judgment.
It remains to consider the second question. The act of 1868, under which the bonds were issued, provides for a levy of taxes, to pay the same, upon real estate only. This act entered into and became part of the contract, and the legislature could not, by subsequent repeal, deprive relator of his rights under it. The provision of the constitution, that no state shall pass a law impairing the obligation of contracts, is a limitation upon the taxing power of a state, as well as upon all its legislation, whatever form it may assume. Therefore, a legislative act which assumes to repeal any tax law in force when relator’s bond was issued, and under which he was entitled to enforce payment, is, as to him, unconstitutional and void. Murray v. Charleston, 96 U. S. 432.
This much is conceded. But, by an act of the general assembly of Missouri, approved March 10,1871, (several years after the issue of the bonds in controversy,) it was provided that taxes to pay such bonds should be levied “on all real estate and personal property, including all statements of merchants doing business,” within the township. Acts of 1871, p. 55.
It is claimed that this latter act has been repealed by being omitted from the Revised Statutes of Missouri recently enacted. It is not suggested by counsel for relator that this act is kept alive by any general saving clause of the Revised Statutes, and I assume that it is no longer in force; and that being so, the question is whether it was in its nature a contract between *5 the relator and the state, so that its repeal should he held to be, as to him, a violation of the federal constitution and therefore void. I know of no authority for the proposition that acts of the legislature passed after the issuance of the relator’s bonds can be held to be a part of the contract with him, and upon the faith of which he invested his money. It is only the laws in force at .the time the contract is made that enter into it. The subsequent enlargement of the taxing power was a matter of gratuity on the part of the state, for which there was no new consideration moving from him.
It does not appear that he purchased his bonds after the passage of the act of 1871, and relying upon its provisions. If it did the question would arise whether he had any right to rely upon any legislation as irrepealable, except that in - force when the bonds were issued; and, as at present advised, I should hold that he was bound to know the law, which is that all acts not in force when the contract was made' were subject to be altered, amended or repealed by the state.
It is unnecessary to discuss the other questions raised by the demurrer. The return is clearly insufficient.
The demurrer is sustained.