ORR & LINDSLEY SHOE CO., et al vs FRANKENTHAL et al.

Opinion delivered September 25, 1902.

1. *Attachment—Instructions—Properly Refused when Covered by Others Given*
   Although a requested instruction is proper, a refusal to give same in the words presented is not error when the points therein contained are covered in other instructions given.

2. *Attachment—Trespass of Officer in Retaining Goods Levied Upon after Notice of Ownership in a Third Person.*

   In an action for trespass against an officer taking certain goods under an attachment, where there is sufficient evidence to present the question to the jury whether or not the officer, after making the levy and before sale, was notified that a portion of the goods belonged to a third person, it was error to refuse to instruct the jury that if they found such to be the fact, then it was the officer's duty to separate the goods belonging to this third party from those of the defendant and release the levy upon such goods, and failing in that he would be liable to such third party for the conversion of such goods.

Appeal from the United States Court for the Northern District.

JOHN R. THOMAS, Judge.

Action by the Orr & Lindsley Shoe Company and another against Alexander Frankenthal and others. Judgment for defendants. Plaintiffs appeal. Reversed.

This is an action for trespass, alleging that the plaintiffs were the owners of certain merchandise of the value of $1,868.24, and that the defendants, on December 16, 1889, in the Chickasaw Nation, wrongfully and unlawfully seized said merchandise and converted the same to their own use, to plaintiff's damage. The defendant Needles answered that at the time of the alleged trespass he was United States marshal for the Indian Territory; that he received a writ of attachment in due form against one W. Scott Cook, directing him to attach and keep all·the property of said Cook in the Inidan Territory; that on December 16, 1889, he executed the writ by levying upon the property in controversy as the property of W. Scott Cook; and that said property was, at the time, in possession of said Cook, and defendant charges the same to have been the property of said W. Scott Cook. The case was tried to a jury before Hon. John R. Thomas, which resulted in a verdict and judgment for the defendants, the appellees, and after motion for new trial the case is now prosecuted by appeal to this court.

This case has been tried heretofore, and taken through this court and to the United States court of appeals of the Eighth Circuit, and remanded by the latter court, and the present trial is by virtue of the remanding order of said court. Briefly stated, the evidence discloses the following facts: One W. Scott Cook, living at Fred, Ind. Ter., was in the retail merchandise business,

(25)

and became indebted to plaintiffs (appellants) for merchandise sold by them to the amount of $1.868; that on November 30, 1889, he executed a bill of sale in favor of plaintiffs conveying to them merchandise in said store of the value of about $1,900; that plaintiffs, through their traveling salesman, dcseeetl the goods mentioned in the bill of sale, and inventoried the same, and separated the same from the residue of the vendor's stock. but replaced them on the shelves and racks in the vendor's store, and placed the goods in charge of the vendor's brother, one David F. Cook, empowering him to sell the same at retail, and account to them for the proceeds; that on December 16, 1889, defendant Needles, marshal for the Indian Territory, seized the goods in question under a writ of attachment issued against W. Scott Cook in favor of certain attaching creditors. The testimony as to whether notice of such sale was given before the levy by the marshall is conflicting, particularly upon the point as to whether or not the vendor had endeavored to dispose of the whole stock, instead of a portion thereof. The testimony shows that, after the marshal had taken possession of said stock of goods, and while they were in his possession, and after he had received notice of plaintiffs' claim to part or all of the stock, they were destroyed by fire. In passing upon this case the United States circuit court of appeals, through Judge Thayer used the following language: ".In conclusion, it will not be out of place to say that the record shows that the controversy between the parties lies within a narrow compass, and that the trial should be carefully confined to the issues disclosed by the record. The plaintiffs rely for a recovery solely on the ground that certain goods were sold and delivered to them on November 30, 1889, for the sum of $1,868.24; then due to them from the vendor. They contend that the goods sold were selected, inventoried and set apart by those in the vendors' store, and that the marshal had notice of these facts prior to the levy, but refused to recognize the transaction as a valid or consummated

sale. The plaintiffs do not claim title to the goods in controversy under or by virtue of any conveyance or mortgage executed prior to November 30, 1889; and whether such prior mortgage or conveyance, if one was executed, was valid or otherwise, is an immaterial issue, so far as the case at bar is concerned. And the defendants, on the other hand, evidently rely for a defense upon the ground that, although a bill of sale, may have been executed at the time alleged, yet that there was no selection of the goods intended to be sold, or separation of the same from the residue of the stock. They contend that they remain mixed with other goods of the plaintiffs of like kind and quality, and that the marshal made the levy in utter ignorance of the plaintiff's rights under the alleged bill of sale. Whether the one or the other of these contentions is well founded in fact is the question that should be submitted to a jury on a retrial of the case, and all extraneous issues should be excluded as far as possible." Shoe Co. vs Needles, 15 C. C. A. 142, 67 Fed. 990. Appellants make nine assignments of error, which will be considered in the opinion.

*Isaac H. Orr* and *N. B. Maxey,* for appellants.

*Stuart & Gordon,* for appellees.

GILL, C. J. The first assignment of error is as follows: "The trial court erred in refusing to give the jury the following instruction, requested by the plaintiffs: "The court instructs you that, although you may believe from the evidence that the goods purchased by plaintiffs were not so marked or designated that the marshal could have distinguished them by inspection or examination, yet if you believe that the marshal had notice of the sale to plaintiffs of the goods sued for, and could have found out which were plaintiff's goods after notice then it was the duty of the marshal to have separated plaintiff's goods from the remainder of the stock, and not levied on them. And if you find from the evidence that he had such notice, and

refused to separate plaintiffs' goods, but levied on them, your verdict should be for the plaintiffs.' " Practically this same instruction was passed upon and held good by the said court of appeals, and unless, in substance or effect, the instruction be given in the other instructions of the court, the refusal to give this instruction must be held as error. The court instructed the jury in its sixth instruction as follows: ' 'If you find from the evidence that the property in controversy in this cause was in fact the property of the plaintiffs, and if you further find that at the time of the levy of the writ of attachment herein the defendants in this case had a knowledge or notice of the fact that the property in controversy belonged to the plaintiffs, and could, by the exercise of ordinary diligence, have ascertained the particular property and separated it from the other property of W. Scott Cook in the house, and refused to do so, then you should find for the plaintiffs." And the court, in its third instruction, said to the jury: "Although you may believe from the evidence that the goods purchased by plaintiffs were not so marked or designated that the marshal could have distinguished them by inspection or examination yet if you believe that the marshal had notice of the sale to plaintiffs of the goods sued for prior to or at the time of the levy, and could have found out which were plaintiffs' goods after such notice, then it was the duty of the marshal to have separated plaintiffs' goods from the remainder of the stock, and not levied upon them; and if you find from the evidence that he had such notice, and refused to separate plaintiffs' goods, but levied upon them, your verdict should be for plaintiffs." We think these two instructions fully covered all the points mentioned as error in appellants' first assignment; and, while the court could have well given the instruction in the form asked for by appellants, where it covered by other instructions the points therein it was not bound to use the words presented to it by the appellants.

The second assignment of error is as follows: "That the

trial court erred in refusing to give the jury the following instruction, requested by plaintiffs: 'The court further instructs you that, although you may believe from the evidence, that the marshal, or his deputy whe executed the writ, did not have notice of the sale by said Cook to the plaintiffs before or at the time of said levy, yet if you find from the evidence that he afterwards received notice of such sale, that then it was his duty to have separated the goods belonging to the plaintiffs from the other stock, if it could have been done, and released the levy on them. And if you believe that he had such notice, and refused to separate the goods, and release the levy on plaintiffs' part of same, you should find for the plaintiffs.'" Appellants insist that the rule is that if the marshal, whether before or after levy, receives notice that property levied upon by attachment belongs to another individual it then becomes his duty to release the levy as to that property; and cites a number of cases to establish this contention. The general rule seems to be, as laid down in Drake, Attachm. § 196, that: "If an officer attaches personalty not the property of the defendant, he is, 'of course, a trespasser on the rights of the owner, who may maintain either trover trespass, or replevin against him. Such an attachment is a tortious act, which is itself a conversion; and, if trover be brought, no demand on the officer need be proved. And it is such an official misconduct as his sureties in his official bond are liable for. If he acts by direction of the plaintiff, or of the attorney in the suit, the plaintiff is regarded as equally guilty, and equally liable for the trespass. * * * And against either officer or plaintiff, where both engage in the act, suit may be brought at once, without any demand or notice, and without the owner being under any obligation to take any steps in the suit in which the seizure is made," And in section 197 the same authority says: "The necessity for the officer's making due inquiry concerning the property he attaches is so highly regarded that he will be treated as a trespasser for seizing property not belonging

to the defendant, even though the owner give him no special notice that the property is his, and make no demand for it.' But the same authority draws the distinction where the property is so intermixed with the property of the defendant that it may not be distinguished. In the second paragraph of the section 199 Mr. Drake says: "When an officer proceeds to execute an attachment, he is authorized to seize any personalty found in the defendant's possession, if he have no reason to suppose it to be the property of another. If it happen that the goods of a stranger are intermixed with those of the defendant, even without the owners knowledge, the owner can maintain no action against the officer for taking them until he have notified the officer, and demanded and identified his goods, and the officer shall have delayed or refused to deliver them. In such case the officer cannot be treated as a trespasser for taking the goods; but, if he sell the whole, after notice of the owner's claim, it will be a conversion, for which trover may be maintained." And in another paragraph of said section the following statement of the law is made: "If an officer be notified, or have reason to believe, that goods of a stranger are intermingled with those of a defendant, it is his duty to make proper inquiry, with a view to avoid seizing property not the defendant's. He may require the claimant to point out his property; and if, being able to do so, he refuse, the officer may seize the whole, without liability to be proceeded against for a tort." The question propsed now by appellant seems not to have been specially pointed out to the court in the preceding trial of the case; nor does it seem to have been directed to the attention of the United States court of appeals. In its decision upon the case the question turned upon whether, at the time the levy was made, the officer then had notice of the sale of the goods to plaintiffs; and that was a question to be determined by the jury under the evidence. But the court does not pass upon the question of the liability of the marshal where he is notified subsequent to the levy of an attachment that a third

party is the owner of the goods attached, or a part thereof. There seems to be no contention on the part of the defendants, and the evidence of the plaintiffs tends to establish the fact, that the marshall, after making the levy, was advised of plaintiffs' claim of the ownership of part or the whole of the property attached, and that at the time of the attachment the goods so claimed were in possession of the plaintiff's agent.

We have examined the cases cited by appellant in support of his contention, and are convinced, in view of the evidence on behalf of plaintiff in the trial of this case, that it was the duty of the court to give the foregoing second instruction asked for by appellant ,or an instruction covering the appellants' contention; and the refusal of court to give such instruction is error. Upon this point the evidence of the defendant tended to show that the agent of the plaintiffs claimed the entire stock of goods; not only the goods mentioned in the bill of sale in evidence, but all the goods in the store. And the jury might believe one or the other of these contradictory claims. If the plaintiff's agent were claiming the whole stock of goods, and as such agent, on the part of plaintiffs, he had a bill of sale of only part of said stock, this would be such a fraud upon the officer that there could be no liability whatever in his seizure under his attachment writ of the whole of the stock of goods. And if this contention was maintained after the service of the writ, and were all of the goods in the possession of the officer, it would still be a fraud upon such officer, and there would be no liability. But if the plaintiffs, having a valid bill of sale of a part of the goods seized upon under the writ, notified the officer of such bill of sale, and of the plaintiff's ownership of certain of the goods so seized, there is no doubt that the officer, upon such notificatoin as to such goods, would be a trespasser, and liable to the plaintiffs for the value thereof; and the jury ought to have been properly instructed as to these points. Buck vs Colbath, 70 U. S. 334, 18 L. Ed.

257; 1 Wat. Tresp. §. 474; Murfree, Sher. § 270a, and cases cited in footnote; Shinn, Attachm. § 387; Drake, Attachm. (6th Ed.) §§ 196-198, inclusive; Harris vs Tenney (Tex. Sup.) 20 S. W. 82, 34 Am. St. Rep. 796.

Inasmuch as all of the instructions of the court excepted to by the plaintiffs, and mentioned in the other specifications of error, are based upon the proposition that the officer would be only liable to plaintiffs in case of the notification prior to the levy of attachment, and we have discussed such question fully in passing upon the second assignment of error, it is unnecessary to take the remaining assignments of error up seriatim, and the case is remanded for further proper proceedings in the court below.    Reversed and Remanded.