## McCAUSEY v. HOEK.

1. EXEMPTIONS—EXECUTION—LEVY—DEBTOR AND CREDITOR.
    The selection of their statutory exemptions by merchants who gave a trust mortgage for the benefit of creditors is not conclusive upon a judgment creditor who did not accept rights under the trust, and he is entitled to attack the amount of such selection by an execution levy upon the property in the hands of an assignee who paid no consideration.

2. SAME—DUTY TO CLAIM—EXECUTIONS.
    Where the assignee of such exempt stock, under a transfer without consideration, does not claim it as exemptions sold to her, the officer who makes a levy is not bound to set them off.

3. EXECUTIONS — LEVY ON PROPERTY OF STRANGER — EFFECT OF MIXING PROPERTY.
    No action lies in favor of a stranger to the writ of execution against the officer making a levy upon property subject thereto and other intermingled property of such stranger who refuses to select the goods which belong to her.

4. SAME—DUTY OF OFFICER.
    The officer is required to make the selection if he can.

5. DAMAGES — TROVER AND CONVERSION—LEVY OF EXECUTION ON PROPERTY OF STRANGER.
    The damages sustained by a third person from the wrongful levy of an execution are the value of the property converted plus the amount of depreciation of the goods.

6. SAME—TORTS—TRESPASS ON THE CASE.
    A trespasser who interrupts a merchant's business is liable for the injury to the business.

7. SAME.
    The cost of repurchase of the goods is not the full measure of damages where a merchant is deprived of his entire stock; and he may recover for profits lost as measured by previous gains, and for losses sustained in performing contracts from which he would otherwise have profited.

8. SAME—DUTY TO MITIGATE.
    The damages so recoverable in an action of tort are subject to the duty to mitigate them by the purchase of other goods.

Error to superior court of Grand Rapids; Stuart, J. Submitted November 17, 1909. (Docket No. 114.) Decided February 3, 1910.

Trespass on the case by Lena B. McCausey against George Hoek. A judgment for plaintiff is reviewed by defendant on writ of error. Reversed.

*Kleinhans & Knappen*, for appellant.

*Charles A. Watt* (*Charles V. Hilding*, of counsel), for appellee.

HOOKER, J. The declaration in this cause is "trespass on the case," charging an unlawful seizure of a stock of goods and conversion of the same to defendant's use. In addition to the value of the goods converted, it claims damages for the interruption of the plaintiff's business and loss of profits. Plaintiff recovered a verdict and judgment of nearly $900, and the defendant appealed.

The plaintiff was conducting a store. She had three classes of goods therein: (1) Some millinery goods given to her by her husband; (2) some furnishing goods that she received from one Sprague; (3) some goods of both kinds purchased by her. The defendant was a constable. He levied on these goods on the 3d day of April, 1907, under an execution issued in a judgment against McCausey and Sprague, claiming the property to be theirs. At the time of the levy and inventory plaintiff claimed the goods to be hers, and the defendant surrendered to her all that she pointed out was hers. This appears to have included only some goods from class 3. The goods retained by the officer were at once removed from the store, and soon afterwards plaintiff's attorney made a formal demand upon defendant for all of the goods taken, claiming them to be the property of the plaintiff. Defendant offered to return to the plaintiff all goods that she would select as her own. She refused to make such selection, or to furnish invoices so that the defendant might do it.

Thereafter the defendant sold the goods at execution sale, and they were bid in by one Post at $75 or $85, and the plaintiff immediately took them from him, paying him the exact amount of his bid.    This was about six weeks after the levy.    The defendant maintains that classes 1 and 2 were subject to levy at the suit of creditors of McCausey and Sprague, former copartners, who were out of business at the time of the levy.    He also claims that such portions of the goods in class 3 as he retained had been so mixed with those in the other classes as to make them indistinguishable, and that he was therefore justified in taking them, subject to plaintiff's right of selection, which he was willing and offered to respect.

These goods were acquired by the plaintiff in the following manner :    Her husband and Sprague engaged in the business of selling millinery and furnishing goods; plaintiff assisting in the millinery department.    Becoming involved, they gave to the firm of Corl, Knott & Co., a creditor, a trust mortgage of all of their property, except their lawful exemptions, in trust for creditors.    Corl, Knott & Co. closed out the stock, after allowing McCausey to select certain goods as exemptions for himself and Sprague.    This occurred about March 8, 1907.    The creditors were not paid in full, and McCausey and Sprague were insolvent.    These so-called exemptions went into the possession of plaintiff, class 1 by gift from McCausey, and class 2 under an oral arrangement that if Sprague did not succeed in selling them, plaintiff should put them with her stock and sell them, accounting to Sprague for the proceeds.    He did not sell them, and she put them on the shelves for sale.    She also bought some goods of both kinds to replenish stock, and these were placed on the shelves also.    These constituted the goods in class 3.

At the time that McCausey and Sprague went out of business, they had a right, as against their creditors, to exemptions, but the creditors could not be bound by their selection; i. e., as to amount and value.    Each was entitled to select from the stock goods amounting in value

to $250, and no more, and we see no reason for saying that the judgment creditors in this case were bound to admit such selection to have been a valid one, even if the mortgagee did acquiesce.    They did not attack the voluntary trust mortgage, and it is not shown that they accepted a dividend from the trustee; but, if they did, this did not deprive them of the right to enforce their judgment against any of the property of the judgment debtors. And such property, in the hands of an assignee who paid no consideration, was subject to the levy, with the right to have exemptions set off if entitled to them and demanded.    See *Ostrander* v. *Packer*, 35 Mich. 430.

They levied their execution upon property supposed to belong to the judgment debtors, and proceeded to make an inventory.    At that time the judgment debtors were out of the mercantile business; one had gone away, and the other had engaged in other business.    The record does not show that the officer had any reason to suppose that they were claiming this property as a selected exemption, or that they were engaged in a business making it exempt. Yet he proceeded to inventory it.    Then the plaintiff claimed the property as her own.    She did not claim it as exempt property sold to her.    Upon this record the officer owed her no duty as to setting off exemptions, as she claimed none.    Had she done so, the levy would not have been unlawful, for the judgment creditor had a right to levy and set off exemptions.    By an *ex parte* selection of an amount for exemptions those parties did not conclude the defendants.    The assignee succeeded to McCausey's rights to exemption, but it was necessary for her to assert them.    *Williams* v. *Brown*, 137 Mich. 569 (100 N. W. 786).    Not having done so, she has waived her right to the goods in class 1.    The same may be said of the goods in class 2, and, further, she makes no claims to recovery of those goods, as shown by her counsel's brief.    They may therefore be considered as out of the case.

Having found that the defendant lawfully seized and sold the goods in classes 1 and 2, it leaves only those in

class 3 to be considered. Those goods were not subject to this execution, and it is only upon the theory of admixture of goods, and a refusal by her to designate them, which no other person could do, that the defendant can escape liability. The proof conclusively shows that she was offered the opportunity of selecting and taking any and all goods that she should claim to be hers. The offer was broad enough to cover goods in any class. She refused; her language implying that she preferred another method of getting her rights. We recognize the injustice of compelling any one to lose their goods through admixture, where it can be avoided. We have no doubt that the intermixture was made in perfect good faith, but the refusal to point out the goods purchased by her, other than to say she claimed them all, was not treating the officer fairly, and it was equivalent to an intentional admixture of her own with goods clearly subject to levy. The officer had the alternative of releasing all the goods or selling all. If he released goods subject to levy and sale, he became liable to the execution creditor. We think, therefore, that he was justified in making the sale.

Counsel for defendant cite many authorities sustaining the propriety of seizing admixed goods, including some subject, and others not subject, to execution. In such a case it is undoubtedly his duty to separate them if possible. In *Daumiel* v. *Gorham*, 6 Cal. 44, the court said:

"Where the goods of a third person are mixed with the property, or in the apparent possession of the judgment debtor, a sheriff who levies upon them, supposing them to belong to the defendant in execution, is not liable as a trespasser *ab initio*. In order to charge him it is necessary to show a notice and demand of the goods, and a delay or refusal to deliver."

In *Taylor* v. *Jones*, 42 N. H. 25, 33, we find it stated that:

" If the plaintiff's goods were intermingled with those of Rand through his own fault, he had neither the possession, nor right of possession, of the goods as against a creditor

or an officer having process against Rand, and attaching the whole intermixture as the property of Rand, and therefore could not maintain trespass for taking them."

It was said in *Lewis* v. *Whittimore*, 5 N. H. 364–366 (22 Am. Dec. 466):

. "The direction which was given to the jury in this case in relation to the corn was correct. It is immaterial whether the corn had been mixed with the plaintiff's assent or not. It was all in the possession of the plaintiff's agent, Haywood, and, while in Haywood's possession, had been intermixed. Haywood at first told the officer that the corn belonged entirely to the plaintiff; and, although he afterwards informed the officer that only a part of the corn belonged to the plaintiff, it does not appear that he stated what portion was the property of the plaintiff. It was the duty of the officer to attach the goods of the debtor, notwithstanding they were intermixed with the goods of the plaintiff; and he had a right to take and hold the whole until the plaintiff identified his goods, and demanded a redelivery. *Shumway* v. *Rutter*, 8 Pick. (Mass.) 443, (19 Am. Dec. 340); *Bond* v. *Ward*, 7 Mass. 127 (5 Am. Dec. 28); 2 Blackstone's Commentaries, p. 405; *Pettingill* v. *Bartlett*, 1 N. H. 87; Cooper's Justinian, Lib. 2 F. 1, §§ 17, 18. The sheriff cannot be treated as a trespasser for doing what he had a right to do. If the plaintiff gave the officer notice of what interest he had in the corn, and demanded a return, trover may be maintained. If the officer has sold the whole, after notice of the plaintiff's claim, that may be a conversion. But trespass does not lie for the original taking."

"It is, at all events, the business of the owner who, wilfully or carelessly, has allowed his goods to become confused with those of a debtor to point out to the officer what belongs to him; and since his own duty is to attach the debtor's goods, whether so mingled or not, the officer is no trespasser merely for having attached, in good faith and with due care, those of another blended in the same mass." 2 Schouler on Personal Property (3d Ed.), § 50.

In *Smokey* v. *Peters-Calhoun Co.*, 66 Miss. 471, 475 (5 South. 632, 14 Am. St. Rep. 575), it was said:

"The goods claimed by appellant having been levied on under the writ of attachment, as part of a stock of goods

intermixed with those of the defendant in the attachment, and appellant having claimed the whole of the stock, instead of pointing out and giving notice to the sheriff of what particular part of it belonged to him, he is not entitled to recover damages for his part of the gooods having been seized and held by the sheriff, until they were, for the first time, designated as belonging to him, on the trial of the claimant's issue. It was the duty of the sheriff to levy on the goods of the defendant in attachment, notwithstanding they were intermixed with those of appellant, and he had a right, and it was his duty, to take and keep the whole, until appellant identified his part of the stock, and demanded that it should be delivered to him. The sheriff cannot be treated as a trespasser for doing what he had a right to do."

The following excerpts from cases are in point: *Orr Shoe Co.* v. *Frankenthal*, 4 Ind. T. 375 (69 S. W. 908):

" If the plaintiffs' agent were claiming the whole of the stock of goods, and as such agent, on the part of plaintiffs, he had a bill of sale of only part of said stock, this would be such a fraud upon the officer that there could be no liability whatever in his seizure, under his attachment writ, of the whole of the stock of goods. And if this contention was maintained after the service of the writ, and were all of the goods in the possession of the officer, it would still be a fraud upon such officer, and there would be no liability."

*Helfrich* v. *Stem*, 17 Pa. 153:

" If, at the time of the levy, it was known to the vendee that the goods were taken as the property of the vendor, and as a means of avoiding the sale, and the vendee gave only a general notice of his claim, such notice will be construed to mean no more than a denial of the fraud in the sale; and it would be unjust and unlawful to allow him, on such notice, to make the sheriff a trespasser, by proof that since the sale to him, he had made additions to the store out of his own means, and confounded them with the goods fraudulently transferred to him."

*Wellington* v. *Sedgwick*, 12 Cal. 476:

"It seems that these goods so sold were mixed with other goods subsequently bought by Wellington; and the

sheriff, by virtue of the last execution, levied on these subsequently acquired goods, as well as those first seized. If the goods first bought were fraudulently sold to Wellington, they were, of course, subject to the execution; and, if they were so mixed or confounded with other goods as that they could not be identified or distinguished, and Wellington failed to point out to the sheriff or designate the goods which were not subject to execution, the sheriff could not be liable for levying on the whole. But the sheriff would be bound, after the levy, on notice to him of the goods not liable, to restore them; but this notice must be specific, apprising him of and designating the particular goods improperly seized, and must be given previously to suit brought."

In *Zielke* v. *Morgan*, 50 Wis. 567 (7 N. W. 651):

"There was evidence which would have warranted the jury in finding, and the jury must now be presumed to have found, that these classes of goods were so mingled in and with the general stock of goods so taken by the respondent on the attachment, as to be indistinguishable, except by the appellant himself, and that the respondent had no knowledge of their identity, or that they were embraced in the stock, and that the appellant said nothing about them at the time of the levy.

"The appellant not only did not claim any parts of the stock by any particular right, irrespective of his purchase from his son, but made a claim utterly inconsistent with such particular right by claiming the whole stock by this fraudulent purchase, and thereby induced the respondent to believe that he had no other right. This not only constituted a waiver of his particular right by failure to claim it at the proper time, but it should operate as an estoppel. The appellant should now be bound by the state of facts which he then induced the respondents to act upon."

In 5 Current Law, p. 12, it is said that—

"It is the duty of a stranger to an execution, whose goods are so intermingled with those of the execution debtor that they cannot be readily distinguished, to designate them to the officer making the levy; and, if he fails to do so, the latter may levy upon the whole."

See, also, 4 Cyc. p. 555. See, also, *Zuehlke* v. *Stone*, 148 Mich. 478 (111 N. W. 1065). We think this rule is

not inconsistent with *Wetherbee* v. *Green,* 22 Mich. 311 (7 Am. Rep. 653), and other cases cited by plaintiff.

These views require us to reverse the judgment; but, as the cause may be tried again, we discuss the question of damages. If the goods given by McCausey were worth only $250 when selected, and the plaintiff had sold some of them, it is sufficiently favorable to her to call those seized worth $250. The goods purchased by her amounted to $343.75, making a total of $593.75, or, as claimed, $605. She did business in the neighborhood of two weeks, realizing profits of some considerable amount, according to her testimony. Some of these goods were returned to her; and when it came to a sale she was able to regain all of them for $75 or $85. Yet a jury gave her a verdict of nearly $900, which was so plainly excessive that the trial judge required a large reduction as a condition for the denial of a motion for a new trial. The plaintiff claimed damages as follows:

(1) The value of the goods converted.
(2) The loss of profits during a period of some weeks pending her reopening two days after the sale.
(3) The loss of profits on certain alleged orders which she had taken.

1. The Value of the Goods Converted. The declaration attempts to combine in one count a claim for damages for the conversion of property and damages for the interruption. The measure of the former is the value of the property converted, or, if recovered, the cost of such recovery plus the amount of depreciation of the goods.

2. Damages for Interruption of Business. That one who, by an act of trespass, renders it impossible to conduct a going business is liable for damages, is settled for this State by the old case of *Allison* v. *Chandler,* 11 Mich. 542. It has been followed in other cases as late as *Hart* v. *Village of New Haven,* 130 Mich. 181, 186 (89 N. W. 677).

We are of the opinion that the cost of repurchase is not necessarily the full measure of damages in a case where a

merchant is deprived of his entire stock. If he was doing a profitable business, and could show approximately the measure of his profits for a period preceding the unlawful interruption, and if he had contracts which could be shown to have included a profit, if performed, and he was prevented from performance, these facts would be proper evidence to go to the jury upon the subject of injury from interruption of his business. This proof would be subject to the inquiry of the necessity for the continuance of the interruption, and whether by the purchase of a new stock, or material for the performance of existing contracts, he could not in whole or in part have avoided or mitigated the damages; but, as we have said before in cases cited, a man who has certainly injured another cannot escape liability in an action of tort, through the difficulty of proving the exact amount of damage suffered. We think a fuller discussion of this question unnecessary, as the cases cited indicate the proper rule for instructing juries in such cases.

The judgment is reversed, and a new trial ordered.

MOORE, McALVAY, and BROOKE, JJ., concurred with HOOKER, J.

BLAIR. J. As this record presents the facts, I concur. If upon another trial it appears that Wilson Bros. recognized the trust mortgage and participated in the dividends, I shall feel at liberty to reach a different result.